IN THE SUPREME COURT OF NORTH CAROLINA

No. 492PA13

Filed 19 December 2014

JUDY HAMMOND

v.

SAIRA SAINI, M.D.; CAROLINA PLASTIC SURGERY OF FAYETTEVILLE, P.C.; VICTOR KUBIT, M.D.; CUMBERLAND ANESTHESIA ASSOCIATES, P.A.; WANDA UNTCH; JAMES BAX; and CUMBERLAND COUNTY HOSPITAL SYSTEM, INC.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 748 S.E.2d 585 (2013), affirming in part and vacating and remanding in part orders entered on 18 June 2012 by Judge Mary Ann Tally in Superior Court, Cumberland County. Heard in the Supreme Court on 6 October 2014.

*Patterson Harkavy LLP, by Burton Craige and Narendra K. Ghosh; and Beaver Holt Sternlicht & Courie, P.A., by Mark A. Sternlicht, for plaintiff-appellee.*

*McGuireWoods, LLP, by Patrick M. Meacham, Mark E. Anderson, and Monica E. Webb, for defendant-appellants Wanda Untch, James Bax, and Cumberland County Hospital System, Inc.*

*The Lawing Firm, P.A., by Sally A. Lawing; and The Whitley Law Firm, by Ann C. Ochsner, for North Carolina Advocates for Justice, amicus curiae.*

*Linwood Jones, General Counsel, for North Carolina Hospital Association, amicus curiae.*

JACKSON, Justice.

In this case we consider whether certain documents in the possession of the Cumberland County Health System, Inc. ("CCHS") are shielded from discovery by section 131E-95 of the North Carolina General Statutes, which protects "[t]he proceedings of a medical review committee, the records and materials it produces and the materials it considers." N.C.G.S. § 131E-95(b) (2013). Because we conclude that CCHS failed to demonstrate the existence of a medical review committee within the meaning of the statute, we hold that the documents are not shielded from discovery on this basis. Accordingly, we affirm the decision of the Court of Appeals.

On 28 September 2011, plaintiff filed a complaint against defendants in Superior Court, Cumberland County. Plaintiff's complaint alleged that on 17 September 2010, she went to Cape Fear Valley Medical Center for surgery to remove a possible basal cell carcinoma from her face. The surgery was performed by Saira Saini, M.D., a physician with Carolina Plastic Surgery of Fayetteville, P.C., and total intravenous anesthesia was administered by Victor Kubit, M.D., an anesthesiologist with Cumberland Anesthesia Associates, P.A. During the surgery, drapes were placed on plaintiff's face, and Dr. Kubit, along with nurse anesthetists Wanda Untch and James Bax, both CCHS employees, administered supplemental oxygen to plaintiff through a face mask. The complaint asserted that the supplemental oxygen was "permitted . . . to build up under the . . . drapes" on plaintiff's face. According to the complaint, the oxygen and the drapes were ignited by an electrocautery device used by Dr. Saini to stop bleeding, and the resulting fire caused first and

second degree burns and left plaintiff with permanent injuries and scars. As a result, plaintiff sought damages based upon negligence.

On 2 December 2011, defendants CCHS, Untch, and Bax filed an answer denying the allegations of negligence.[1] Subsequently, plaintiff served interrogatories and requests for production of documents on these defendants. Defendants objected to some of plaintiff's discovery requests and argued, *inter alia*, that N.C.G.S. § 131E-95 shielded from discovery: (1) documents titled "Quality Care Control Reports" ("QCC Reports") prepared by Bax and Stephanie Emanuel; (2) notes taken by CCHS Risk Manager Harold Maynard; and (3) a document titled "Root Cause Analysis Report" ("RCA Report").

Plaintiff filed motions to compel discovery pursuant to Rule 37 of the North Carolina Rules of Civil Procedure. In opposing these motions, defendants submitted an affidavit from Maynard and a copy of an administrative policy titled "Sentinel Events and Root Cause Analysis" ("RCA Policy"). In addition, defendants submitted copies of the documents that they had withheld to the trial court for *in camera* review. On 18 June 2012, the trial court entered orders granting plaintiff's motions to compel discovery. On an interlocutory appeal from these orders, the Court of Appeals affirmed the trial court's conclusion that N.C.G.S. § 131E-95 did not apply because defendants had not shown that the withheld documents were part of a medi-

---

[1] The remaining defendants are not parties to this appeal.

cal review committee's proceedings, were produced by a medical review committee, or were considered by a medical review committee as required by the statute. *Hammond v. Saini*, ___ N.C. App. ___, ___, 748 S.E.2d 585, 590 (2013). We allowed defendants' petition for discretionary review.[2]

Defendants argue that after the operating room fire that injured plaintiff, CCHS established a Root Cause Analysis Team ("RCA Team"), which constitutes a medical review committee pursuant to N.C.G.S. § 131E-76(5). Defendants contend that as a result, the QCC Reports, Maynard's notes, and the RCA Report, which allegedly were considered or produced by the RCA Team, are protected by N.C.G.S. § 131E-95. We disagree.

This matter presents a question of statutory interpretation, which we review de novo. *In re Vogler Realty, Inc.*, 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012) (citation omitted); *see also Bryson v. Haywood Reg'l Med. Ctr.*, 204 N.C. App. 532, 535, 694 S.E.2d 416, 419 (citation omitted), *disc. rev. denied*, 364 N.C. 602, 703 S.E.2d 158 (2010). Pursuant to subsection 131E-95(b), "[t]he proceedings of a medical review committee, the records and materials it produces and the materials it considers" are shielded from discovery and introduction into evidence in certain civil cases. N.C.G.S. § 131E-95(b). A medical review committee is

---

[2] In addition, the Court of Appeals considered other issues raised by defendants. *Hammond*, ___ N.C. App. at ___, ___, 748 S.E.2d at 588, 592-94. These issues were not presented in the petition for discretionary review and are not before this Court. *See* N.C. R. App. P. 16(a).

any of the following committees formed for the purpose of evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing:

a. A committee of a state or local professional society.

b. A committee of a medical staff of a hospital.

c. A committee of a hospital or hospital system, if created by the governing board or medical staff of the hospital or system or operating under written procedures adopted by the governing board or medical staff of the hospital or system.

d. A committee of a peer review corporation or organization.

*Id.* § 131E-76(5) (2013). The party asserting the privilege has the burden to demonstrate each of its essential elements and cannot meet this burden by mere conclusory assertions. *In re Miller*, 357 N.C. 316, 336, 584 S.E.2d 772, 787 (2003). In the case *sub judice*, defendants rely upon subdivision (c) of this definition in asserting that the RCA Team constitutes a medical review committee. Necessarily, to establish the applicability of the definition in subdivision (c), the evidence must set forth either how the committee was "created" or how the "written procedures" it "operat[es] under" were "adopted." N.C.G.S. § 131E-76(5)(c); *see also Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 84, 347 S.E.2d 824, 829-30 (1986) (considering whether a hospital's board of trustees constituted a medical review committee based upon evaluation of the roles and powers of the board, the bylaws of the hospital and

medical staff, and the requirement that a specific officer "be invited to attend" medical staff executive committee meetings).

Here, defendants rely upon Maynard's affidavit, which states in pertinent part:

> 3. The attached CCHS Administrative Policy titled "Sentinel Events and Root Cause Analysis" was in place on September 17, 2010.
>
> 4. Pursuant to this policy, the events related to Ms. Hammond's surgery on September 17, 2010, were considered to be a sentinel event and a root cause analysis was performed that resulted in the production of a root cause analysis report. The sentinel event and root cause analysis processes are peer review processes designed to evaluate the quality, cost of, and/or necessity for hospitalization and/or the providing of health care.
>
> 5. In general, the peer review committees established to deal with sentinel events and prepare a root cause analysis are created by the medical staff and governing board of CCHS and operate under the attached written procedures, which have been adopted by the medical staff and governing board of the healthcare system. This was true on September 17, 2010.
>
> 6. Pursuant to the attached CCHS policy, the sentinel event and root cause analysis activities are considered Medical Review Committees as defined by N.C.G.S. §[ ]131E-76(5). The proceedings related to the sentinel event and root cause analysis peer review activities, the records and materials they produce, and the materials they consider are confidential pursuant to N.C.G.S. §[ ]131E-95.

This affidavit is insufficient to demonstrate that the RCA Team meets the criteria for a medical review committee as defined by N.C.G.S. § 131E-76(5)(c). Instead, the

affidavit merely recites the language of the statute and offers the conclusory assurance that each requirement has been satisfied. The affidavit does not provide specific evidence that could serve as the basis of findings of fact or conclusions of law. In addition, it explains none of the formal organizational processes that led to the adoption of the RCA Policy and the creation of the RCA Team and identifies none of the departments or personnel involved.

Similarly, defendants rely upon the RCA Policy, which does not contain sufficient evidence to demonstrate the applicability of N.C.G.S. §§ 131E-76(5) and 131E-95(b). Nothing about the policy itself indicates that the RCA Team "operat[ed] under" the policy in this investigation. *See* N.C.G.S. § 131E-76(5)(c). In addition, it does not appear that the RCA Policy was "adopted by the governing board or medical staff of" CCHS. *See id.* The policy states only that it was "approved by MN" and that it originated in the "Performance Improvement/Patient Safety" department. No evidence has identified these entities as the governing board or medical staff of CCHS.

Based upon the evidence in the record, we are unable to conclude that the RCA Team constitutes a medical review committee pursuant to N.C.G.S. § 131E-76(5). As a result, the trial court did not err by concluding that the QCC Reports, Maynard's notes, and the RCA Report are not protected by N.C.G.S. § 131E-95(b). The decision of the Court of Appeals, except as modified herein, is affirmed as to the

issue on direct appeal pursuant to the PDR.  We remand this case to the COA for further remand to the trial court for additional proceedings not inconsistent with this opinion.

MODIFIED, AFFIRMED, AND REMANDED.