IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-410

No. COA20-724

Filed 3 August 2021

Mecklenburg County, No. 18 CVS 8382

HANIA H. WILLIAMS as Executor and Administrator of the Estate of PATRICK WILLIAMS, Plaintiff,

v.

MARCHELLE ISYK ALLEN, P.A., NILES ANTHONY RAINS, M.D., BRONWYN LOUIS YOUNG II, M.D., EMERGENCY MEDICINE PHYSICIANS OF MECKLENBURG COUNTY, PLLC d/b/a US ACUTE CARE SOLUTIONS, LLC, C. PETER CHANG, M.D., CHARLOTTE RADIOLOGY, P.A., THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a CAROLINAS HEALTHCARE SYSTEM or ATRIUM HEALTH, Defendants.

Appeal by defendants from order entered 24 March 2020 by Judge Forrest Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 May 2021.

*Knott & Boyle, PLLC, by W. Ellis Boyle, for plaintiff-appellee.*

*Dickie, McCamey & Chilcote, P.C., by John T. Holden, for defendants-appellants Marchelle Allen and Emergency Medicine Physicians of Mecklenburg County, PLLC.*

TYSON, Judge.

¶ 1        Marchelle Isyk Allen, P.A. and Emergency Medicine Physicians of Mecklenburg County, PLLC ("EMP") (collectively "Defendants") appeal from an order filed 24 March 2020 compelling production of a document claimed as privileged by

Defendants. We remand for additional findings of fact and conclusions of law.

## I. Background

Patrick Williams ("Williams") suffered back, stomach, and hip pains, which worsened throughout the morning and afternoon of 6 May 2016. Williams' wife, Hania H. Williams, ("Plaintiff") took Williams to the Piedmont Urgent Care-Baxter in Fort Mill, South Carolina.

Williams could not get out of the car at Piedmont Urgent Care-Baxter. After speaking with Plaintiff, staff at Piedmont Urgent Care-Baxter called 911 for assistance. Williams' condition was not evaluated by a healthcare provider at Piedmont Urgent Care-Baxter. Emergency Medical Services responded to Piedmont Urgent Care-Baxter, moved Williams into an ambulance, and transported him to the emergency department ("ED") at Carolinas Medical Center Pineville Hospital ("CMC-Pineville"). Williams arrived in the ED at 3:52 p.m.

Dr. Brownyn Louis Young, II ordered 7.5 mg of oral hydrocodone and 600 mg of ibuprofen for Williams. The record does not show whether these medicines were issued pursuant to "standing orders" by Dr. Young, or if he had evaluated Williams prior to these orders being administered. Around 4:50 p.m., Physician Assistant Marchelle Allen ("Allen") met with and evaluated Williams. Williams reported he was experiencing increasing lower back pain that radiated down his left leg. Allen ordered 4 mg of morphine, 10 mg of Decadron, 10 mg of Flexeril, 4 mg of Zofran, and

an x-ray to be administered to Williams' spine.

¶ 5        Dr. C. Peter Chang read the x-ray and reported "no acute osseous abnormality" and "unusual linear calcifications seen to the right and left of the lumbar spine along the retroperitoneum likely vascular in nature." Dr. Chang noted the x-rays were "negative for acute pathology, . . . negative for acute bony abnormality . . . [and] show vascular calcifications."

¶ 6        Allen did not order further diagnostic tests for Williams. Williams was diagnosed with "left lumbar radiculopathy." Allen ordered prescriptions for Flexeril and hydrocodone. Williams was discharged from CMC-Pineville with instructions to schedule an office visit with OrthoCarolina "within 2-4 days." Dr. Niles Anthony Rains signed Williams' record of the treatment provided by Allen on 7 May 2016 at 6:36 a.m.

¶ 7        Once home, Williams took the prescribed hydrocodone every six hours, but his pain persisted. Williams also developed abdominal pains. Williams returned to the CMC-Pineville ED on 7 May 2016 at 9:56 p.m. Williams presented with low blood pressure and reported severe abdominal pain.

¶ 8        Dr. Rains ordered a CT angiogram of Williams' chest, abdomen, and pelvis with an IV contrast. Dr. Charlie McLaughlin read the images and diagnosed Williams with a ruptured abdominal aortic aneurism measuring 12 x 9.7 centimeters. Dr. Rains contacted the ED at Carolinas Medical Center Main ("CMC-Main") about

transferring Williams for immediate surgical repair of the ruptured aneurism. Williams was transferred to CMC-Main by helicopter. Surgery to repair the ruptured aneurism was unsuccessful in saving Williams' life. Williams was pronounced dead at 3:24 a.m. on 8 May 2016.

¶ 9        Dr. Rains spoke with Allen on 9 May 2016 and informed her of Williams' death. Dr. Rains also relayed to Allen Plaintiff's 7 May 2016 statement to emergency department staff if anything should happen to Williams, she would be filing a claim against the personnel who treated him during his 6 May 2016 visit. Dr. Rains instructed Allen to memorialize her interactions with and treatment of Williams on an electronic form provided by her EMP group employer.

¶ 10       Williams' estate brought this action for wrongful death on 2 May 2018, and Plaintiff asserted claim for loss of consortium. Plaintiff requested production of documents relating to investigation by Defendants and any information related to Defendants' interactions with and their care provided to Williams.

¶ 11       Allen submitted a privilege log identifying a four-page "diary" entry she had written on 10 May 2016, concerning the event claiming: "Work Product, and Prepared by the Defendants in anticipation of litigation, peer review." Plaintiff filed a motion to compel on 17 July 2019 pursuant to N.C. Gen. Stat. § 1A-1, Rule 37(a) (2019). Plaintiff sought the production of a four-page document identified as typed notes Allen had created 10 May 2016, as identified in the privilege log produced on 11 July

2019. After hearing from the parties and examining the document at issue, the trial court granted Plaintiff's motion to compel and the four-page document was delivered to Plaintiff.

¶ 12        Allen was deposed on 30 October 2019. During Allen's deposition, her "diary" entry was presented to her, and the existence of an additional document was discovered. This additional two-page document was not included in Defendants' privilege log, and it was withheld from disclosure due to Defendants' claim of Medical Review Committee and other privileges under N.C. Gen. Stat. § 90-21.22A (2019). Allen created this document utilizing EMP's company website and submitted it to risk management.

¶ 13        Plaintiff filed a motion to enforce her previous motion to compel, pursuant to N.C. Gen. Stat. § 1A-1, Rule 37(b) (2019). In her motion, Plaintiff argued Allen's diary entry that was eventually produced was not in fact what they were seeking in their first motion to compel hearing. Plaintiff alleged she was seeking this second document submitted to risk management and the arguments made by Defendants' counsel at the motion to compel hearing about privilege and peer review were asserted to this second document. Plaintiff argued the asserted privilege could not relate to Allen's diary entry. After hearing from the parties, reviewing the affidavits, and conducting an in-camera review of the disputed second document, the trial court granted the motion, but ordered the subject document to be kept under seal, pending

appeal. The trial court denied Plaintiff's sanctions motion and awarded no fees or sanctions. Defendants appealed.

## II.    Jurisdiction

¶ 14    "An order compelling discovery is generally not immediately appealable because it is interlocutory and does not affect a substantial right that would be lost if the ruling were not reviewed before final judgment." *Sharpe v. Worland,* 351 N.C. 159, 163, 522 S.E.2d 577, 579 (1999). Our Court has held: "As a general proposition, only final judgments, as opposed to interlocutory orders, may be appealed to the appellate courts." *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 77, 711 S.E.2d 185, 188 (2011) (citations omitted).

¶ 15    "Appeals from interlocutory orders are only available in exceptional cases." *Id.* (citation and internal quotation marks omitted). Our rules "against interlocutory appeals seek[] to prevent fragmentary, premature and unnecessary appeals by allowing the trial court to bring a case to final judgment before its presentation to the appellate courts." *Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 141, 526 S.E.2d 666, 669, (2000) (citation omitted).

¶ 16    "No hard and fast rules exist for determining which appeals affect a substantial right. Rather, such decisions usually require consideration of the facts of the particular case." *Estrada v. Jaques*, 70 N.C. App. 627, 640, 321 S.E.2d 240, 249 (1984) (citations omitted).

An order compelling or enforcing discovery or for sanctions may be immediately appealable if it affects a substantial right under N.C. Gen. Stat. §§ 1-277 or 7A-27(b)(3)a (2019). A substantial right is invoked when a party asserts a statutory privilege, which directly relates to the matter to be disclosed, and the assertion of the privilege is not "frivolous or insubstantial." *K2 Asia Ventures v. Trota*, 215 N.C. App. 443, 447, 717 S.E.2d 1, 4 (2011) (citation omitted). Orders compelling discovery of materials asserting protection by the medical review privilege affects a substantial right and are immediately reviewable on appeal. *Hammond v. Saini*, 229 N.C. App. 359, 362, 748 S.E.2d 585, 588 (2013), *aff'd as modified*, 367 N.C. 607, 766 S.E.2d 590 (2014). This issue is properly before this Court.

### III. Issue

Defendants argue the trial court erred by granting Plaintiff's motion to enforce its previous motion to compel production.

### IV. Motion to Compel

### A. Standard of Review

"Whether or not the party's motion to compel discovery should be granted or denied is within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123, *disc. rev. denied*, 336 N.C. 615, 447 S.E.2d 414 (1994). "To demonstrate an abuse of discretion, the appellant must show that the trial court's

ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 45 (2005) (internal citation omitted), *aff'd per curiam*, 360 N.C. 356, 625 S.E.2d 779 (2006). Questions of statutory interpretation are reviewed *de novo*. *State v. Mackey*, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011).

## B. Analysis

¶ 20  The medical review committee privilege is "designed to encourage candor and objectivity in the internal workings of medical review committees." *Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 83, 347 S.E.2d 824, 829 (1986). The party asserting the privilege bears the burden of proof. *Wachovia Bank v. Clean River Corp.*, 178 N.C. App. 528, 531, 631 S.E.2d 879, 882 (2006).

¶ 21  Defendants argue the "fundamental and sole requirement for members of a medical review committee under N.C. Gen. Stat. § 90-21.22A" is that they be licensed. To claim the medical review committee privilege under the statute, a claimant must demonstrate the committee is composed of "healthcare providers licensed under this chapter," the committee be "formed for the purpose of evaluating the quality of, cost of, or necessity for health care services, including provider credentialing," and the documents must be "produced or presented" by the medical review committee. N.C. Gen. Stat. § 90-21.22A (2019).

¶ 22  The trial court did not make the requested findings of fact or conclusions

concerning these statutory elements. When asked specifically to do so by counsel, the trial court declined to rule about whether the peer review privilege applied or not. When requested, the trial court's findings of fact and conclusions of law must be sufficiently detailed to allow for meaningful appellate review. *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

Defendants' counsel correctly sought clarification of the ruling and requested the trial court to make specific findings and conclusions. "Without setting forth findings of fact, this Court cannot conduct a meaningful review of the conclusions of law and test the correctness of the trial court's judgment." *Earl v. CGR Dev. Corp.*, 242 N.C. App. 20, 24, 773 S.E.2d 551, 554 (2015) (citations, alternations, and internal quotation marks omitted).

The order of the trial court is remanded for factual findings and conclusions of whether Defendants carried their burden to demonstrate the peer or medical review committee they are relying on is composed exclusively of licensed providers under Chapter 90, formed for the purpose of evaluating the quality of the healthcare provided, and whether Allen's document was actually "produced or presented" at the request of her medical superior to the medical review committee in order to properly invoke the privilege under the statute. *See* N.C. Gen. Stat. § 90-21.22A.

## V. Conclusion

The trial court failed to make the Defendant's requested and requisite findings

of fact and conclusions for meaningful appellate review of the Defendants' burden to invoke the privilege. *Id.* Upon remand, the trial court is free to hear arguments or receive additional material to make and enter factual findings and conclusions consistent with the requirements of N.C. Gen. Stat. § 90-21.22A. *It is so ordered.*

REMANDED.

Judge JACKSON concurs.

Judge MURPHY dissents with separate opinion.

MURPHY, Judge, dissenting.

Without the document at issue contained in the Record before us, we cannot meaningfully review the trial court's order granting enforcement of Plaintiff's preexisting motion to compel. For that reason, I would hold Defendants waived this issue by failing to comply with the requirements established by our rules of appellate procedure, and dismiss the appeal on those grounds.

Even setting aside this error by Defendants, I would nonetheless affirm the trial court's order, and hold Defendants failed to satisfy their burden of production in asserting the medical review committee privilege provided by N.C.G.S. § 90-21.22A. Further, contrary to the Majority's holding, the trial court was not obligated to make specific findings of fact in its order concerning the statutory elements of Defendants' medical review committee privilege claim. Consequently, I find it unnecessary to remand this matter to the trial court. For all of these reasons, I must respectfully dissent.

## ANALYSIS

### A. Insufficient Record on Appeal

Defendants appeal the trial court's order granting Plaintiff's motion to enforce an existing motion to compel discovery pursuant to N.C.G.S. § 1A-1, Rule 37(b). After learning of the existence of a document in a 30 October 2019 deposition of Defendant Allen, Plaintiff filed a motion seeking its disclosure on 21 November 2019. The trial court entered an order on 24 March 2020 (the "Order") that stated, in relevant part:

> Plaintiff's [m]otion for enforcement of the existing [o]rder
> pursuant to Rule 37(b) is granted. . . . The [trial] [c]ourt has
> ordered that this document that [] Defendants handed up
> under seal during the hearing be maintained under seal by
> the Clerk's office pending the time for any appeal to be
> filed, and if appeal is taken, to remain there until the
> outcome of that appeal is completed before actually
> producing it to the other parties[.]

¶ 29 As the Majority correctly states, the Order stipulates that the document at issue be maintained under seal, pending appeal. *Supra* at ¶ 13. However, the fact that the document is maintained under seal does not relieve Defendants of their "duty . . . to ensure this Court has everything needed for a proper review of [the] issues on appeal." *Gilmartin v. Gilmartin*, 263 N.C. App. 104, 107, 822 S.E.2d 771, 774 (2018) (citing *State v. Davis*, 191 N.C. App. 535, 539, 664 S.E.2d 21, 24 (2008)), *disc. rev. denied*, 372 N.C. 291, 826 S.E.2d 702 (2019).[1]

¶ 30 Rule 9 of the North Carolina Rules of Appellate Procedure, which governs the record on appeal, states in relevant part:

> (a) . . . . In appeals from the trial division of the General
> Court of Justice, review is solely upon the record on appeal

---

[1] *See also Doe v. Doe*, 263 N.C. App. 68, 71-72, 72 n.2, 823 S.E.2d 583, 586 & n.2 (2018) (reviewing a sealed court file in its entirety *in camera*); *State v. McCoy*, 228 N.C. App. 488, 492, 745 S.E.2d 367, 370 (2013) ("During the preparation of the record on appeal, [the] defendant's appellate counsel requested and obtained a copy of the sealed [document] from the trial court."), *disc. rev. denied, appeal dismissed*, 367 N.C. 530, 762 S.E.2d 462 (2014); *Daly v. Kelly*, 272 N.C. App. 448, 453 n.7, 846 S.E.2d 830, 833 n.7 (2020) ("This Court has reviewed the records under seal[.]"); *Premier, Inc. v. Peterson*, 255 N.C. App. 347, 352, 804 S.E.2d 599, 603 (2017) (noting "we considered all of the documents and testimony under seal").

. . . .

> (1) . . . . The record on appeal in civil actions and special proceedings shall contain:
>
> > . . .
> >
> > e. so much of the litigation . . . as is necessary for an understanding of all issues presented on appeal . . . ;
> >
> > . . .
> >
> > j. copies of all other papers filed . . . in the trial court which are necessary to an understanding of all issues presented on appeal unless they appear in the transcript of proceedings . . . ;
>
> . . . .
>
> (c) Presentation of Testimonial Evidence and Other Proceedings. . . . .
>
> > . . . .
> >
> > (4) Presentation of Discovery Materials. . . . . In all instances in which discovery materials are considered by the trial tribunal, other than as evidence offered at trial, the following procedures for presenting those materials to the appellate court shall be used: . . . . discovery materials, including . . . motions to produce, and the like, pertinent to issues presented on appeal, may be set out in the record on appeal or may be sent up as documentary exhibits.

N.C. R. App. P. 9(a)(1)(e), (a)(1)(j), (c)(4) (2021). Notwithstanding the fact this sealed

document is central to our ability to meaningfully review the issues presented in this

appeal, Defendants failed to include it in the Record, send it as a documentary

exhibit, or provide it under seal.

¶ 31 The failure to follow the rules of appellate procedure "ordinarily forfeit[s] [a party's] right to review on the merits." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 194, 657 S.E.2d 361, 363 (2008). "[T]he appellate court may not consider sanctions of any sort [including dismissal] when a party's noncompliance with nonjurisdictional requirements of the [appellate] rules does not rise to the level of a 'substantial failure' or 'gross violation.'" *Id.* at 199, 657 S.E.2d at 366. "In determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation, the [appellate] court may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review." *Id.* at 200, 657 S.E.2d at 366.

¶ 32 Here, Defendants' Appellate Rules violation is the failure to include the document at issue in the Record on appeal. In the absence of this document, "we cannot, without engaging in speculation," assess the merits of the Order granting Plaintiff's motion, or the claim by Defendants that the document is covered by medical review committee privilege under N.C.G.S. § 90-21.22A. *CRLP Durham, LP v. Durham City/Cty. Bd. of Adjustment,* 210 N.C. App. 203, 212, 706 S.E.2d 317, 323 ("From the record before us, we cannot [review the issue presented], without engaging in speculation . . . as [the] petitioner failed to include in the record on appeal any portion of the [document at issue]."), *disc. rev. denied*, 365 N.C. 348, 717 S.E.2d 744

(2011). This violation severely impairs our ability to conduct meaningful appellate review and rises to the level of a "substantial failure" and "gross violation." *Dogwood*, 362 N.C. at 199, 657 S.E.2d at 366.

Upon concluding the noncompliance rises to a level of a substantial failure or gross violation, the next step is to "determine which, if any, sanction under Rule 34(b) should be imposed. [] [I]f . . . dismissal is the appropriate sanction, [the final step is to] consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal." *Id*. at 201, 657 S.E.2d at 367.

Rule 34(b) of the North Carolina Rules of Appellate Procedure provides:

> (b) A court of the appellate division may impose one or more of the following sanctions:
>
>> (1) dismissal of the appeal;
>>
>> (2) monetary damages including, but not limited to,
>>
>>> a. single or double costs,
>>>
>>> b. damages occasioned by delay,
>>>
>>> c. reasonable expenses, including reasonable attorney fees, incurred because of the frivolous appeal or proceeding;
>>
>> (3) any other sanction deemed just and proper.

N.C. R. App. P. 34(b) (2021). Dismissal is appropriate here because without the document at issue contained in the Record, we cannot determine whether the trial court erred in granting Plaintiff's motion to enforce the existing motion to compel.

"[I]n a case such as this, and in order to ensure better compliance with the appellate rules, . . . dismissal is appropriate and justified." *Ramsey v. Ramsey*, 264 N.C. App. 431, 437, 826 S.E.2d 459, 464 (2019). The only way we could reach the merits of this case is by invoking Rule 2.

Rule 2 "may only [be invoked] on rare occasions and under exceptional circumstances to prevent manifest injustice to a party, or to expedite decision in the public interest[.]" *Dogwood*, 362 N.C. at 201, 657 S.E.2d at 367 (marks and citations omitted). The decision whether to invoke Rule 2 is purely discretionary and is "to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." *State v. Hart*, 361 N.C. 309, 316, 644 S.E.2d 201, 205 (2007) (marks omitted). Nothing in this matter demonstrates any "exceptional circumstances" to suspend or vary the appellate rules. *Dogwood*, 362 N.C. at 201, 657 S.E.2d at 367. The circumstances of this case do not justify invoking Rule 2, and I would decline to reach the merits of the case on that basis. However, because the Majority addresses the merits of the case and I disagree with its analysis and resolution, my dissent must also encompass the merits in the following sections. *See* N.C. R. App. P. 16(b) (2021) ("When the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those issues that are (1) specifically set out in the dissenting opinion as the basis for that dissent[.]"). I would hold the Order should be affirmed

for the reasons discussed in Parts B and C, below.

## B. Burden of Production under N.C.G.S. § 90-21.22A

¶ 36 Even if the appeal was not dismissed for failure to produce the document at issue, I would nonetheless affirm the Order, as Defendants failed to produce evidence that they are entitled to the medical review committee privilege set forth in N.C.G.S. § 90-21.22A.

¶ 37 Located in Chapter 90, Article 1D of our General Statutes, N.C.G.S. § 90-21.22A provides:

> (a) As used in this section, the following terms mean:
>
> (1) "Medical review committee." - A committee composed of health care providers *licensed under this Chapter [90]* that is formed for the purpose of evaluating the quality of, cost of, or necessity for health care services, including provider credentialing.  "Medical review committee" does not mean a medical review committee established under [N.C.G.S. §] 131E-95.
>
> (2) "Quality assurance committee." - Risk management employees of an insurer licensed to write medical professional liability insurance in this State, who work in collaboration with health care providers licensed under this Chapter, and insured by that insurer, to evaluate and improve the quality of health care services.
>
> (b) A member of a duly appointed medical review or quality assurance committee who acts without malice or fraud shall not be subject to liability for damages in any civil action on account of any act, statement, or proceeding undertaken, made, or performed within the scope of the functions of the committee.

> (c) The proceedings of a medical review or quality
> assurance committee, the records and materials it
> produces, and the materials it considers shall be
> confidential and not considered public records within the
> meaning of [N.C.G.S. §§] 132-1, 131E-309, or 58-2-100; and
> shall not be subject to discovery or introduction into
> evidence in any civil action against a provider of health
> care services who directly provides services and is licensed
> under this Chapter . . . , which civil action results from
> matters that are the subject of evaluation and review by
> the committee. . . . . However, information, documents, or
> records otherwise available are not immune from discovery
> or use in a civil action merely because they were presented
> during proceedings of the committee. . . . .
>
> (d) This section applies to a medical review committee,
> including a medical review committee appointed by one of
> the entities licensed under Articles 1 through 67 of Chapter
> 58 of the General Statutes.
>
> (e) Subsection (c) of this section does not apply to
> proceedings initiated under [N.C.G.S. §] 58-50-61 or
> [N.C.G.S. §] 58-50-62.

N.C.G.S. § 90-21.22A (2019) (emphasis added).

¶ 38      The parties dispute the burden required to demonstrate compliance with

N.C.G.S. § 90-21.22A.  Specifically, Plaintiff argues "Defendants had to affirmatively

prove that all members of its nation-wide central medical review committee . . . were

Chapter-90-licensed health care providers under North Carolina law."  Defendants

assert that because the term "health care provider" as used in N.C.G.S. § 90-

21.22A(a)(1) is not defined in Chapter 90 general definitions, we must look to

definitions contained in other articles to interpret its meaning.  Defendants

specifically point to the definition of "health care provider" in N.C.G.S. § 90-21.11,

located in Chapter 90, Article 1B of our General Statutes, which states, in pertinent

part:

> The following definitions apply in *this Article [1B]*:
>
> (1) Health care provider. - Without limitation, any of the following:
>
> a. A person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, or psychology.

N.C.G.S. § 90-21.11(1)(a) (2019) (emphasis added). Defendants' argument is

unpersuasive, as the application of this proposed definition would contravene basic

principles of statutory interpretation.

> Statutory interpretation properly begins with an examination of the plain words of the statute. If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning. However, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. Canons of statutory interpretation are only employed if the language of the statute is ambiguous or lacks precision, or is fairly susceptible of two or more meanings.

*JVC Enters. v. City of Concord*, 376 N.C. 782, 2021-NCSC-14, ¶ 10 (citations and marks omitted). The plain words of N.C.G.S. § 90-21.22A indicate a medical review committee must be composed of "health care providers licensed under [Chapter 90.]" N.C.G.S. § 90-21.22A(a)(1) (2019). The statute is clear and unambiguous–it contains no contradictions, and it is not "fairly susceptible of two or more meanings." *JVC*, 376 N.C. 782, 2021-NCSC-14 at ¶ 10. Consequently, we must interpret its words in accordance with their plain and definite meaning, and need not look to definitions in other articles, consider legislative intent, or employ other canons of statutory construction. *Id.* By its plain language, N.C.G.S. § 90-21.22A requires members of a medical review committee to be health care providers licensed under Chapter 90, to wit, to be licensed by North Carolina. In addition, N.C.G.S. § 90-21.11 explicitly states "[t]he following definitions apply *in this Article*[,]" and contains no indication that the definition of "health care provider" located in Article 1B in N.C.G.S. § 90-21.11(1) would apply to other articles within Chapter 90. N.C.G.S. § 90-21.11 (2019) (emphasis added).

¶ 39 "[D]efendants, as the parties objecting to the disclosure of the [document] on the basis of this privilege, bear the burden of establishing that [P]laintiff's discovery request[] fall[s] within the scope of the privilege." *Hammond v. Saini*, 229 N.C. App. 359, 365, 748 S.E.2d 585, 589 (2013), *modified and aff'd by* 367 N.C. 607, 766 S.E.2d 590 (2014). To satisfy their burden in claiming the medical review committee

privilege, Defendants needed to prove to the trial court's satisfaction that every member of the qualifying medical review committee is a health care provider licensed under Chapter 90. N.C.G.S. § 90-21.22A(a)(1) (2019). Defendants attempted to meet their burden by filing an affidavit of Justin Otwell, Esq. ("Otwell"), the Vice President of Claims and Risk Management at an affiliate corporation of EMP. Otwell's affidavit "sets forth the procedure by which EMP set up its medical review committee and how materials are submitted to that committee." Otwell's affidavit states:

> At the time that Mr. Williams was seen by Ms. Allen, EMP had a central medical review committee. This was a committee composed of licensed healthcare providers which was formed for the purpose of evaluating the quality, costs and necessity for the healthcare services provided by EMP. It also was created and empowered to evaluate and improve the quality of healthcare services provided by EMP's doctors and physician's assistants.
>
> As part of the work of the medical review committee, providers could, in appropriate circumstances, provide information to the committee about patient care for evaluation by the committee. One way such information could be supplied to the committee in 2016 was via a computer program available at EMP locations throughout the country. A provider would enter information about the patient, and it would be transmitted to the medical review committee for evaluation.
>
> In the case of Mr. Williams, Ms. Allen supplied information to the medical review committee utilizing a computer terminal at CMC Pineville hospital. This information was supplied to the committee via a computer generated form. Attached to this affidavit as "Sealed Exhibit A" is the form generated by Ms. Allen in May 2016 and submitted to the

committee with information about Mr. Williams. "Sealed Exhibit A" was used as part of the proceedings of the medical review committee at EMP and was generated for the purposes of that committee. This document was not created as part of the medical record in this case, and it is not a publicly available document.

This document was provided to John Holden, our North Carolina counsel on [5 November 2019], at his request.

It is my understanding that the activities and proceedings of a medical review committee, including the materials it considers, shall be confidential and are not public records under [N.C.G.S. §] 90-21.22A. The document attached to this affidavit as "Sealed Exhibit A" is part of the proceedings of the committee and was generated for the use of the committee in evaluating patient care. As such, I would respectfully request that it be withheld from discovery.

It is imperative that the actions of medical review committees be confidential and that the materials considered and generated by them not be utilized in litigation, to ensure full openness in the activities of the committee. These committees are utilized by medical organizations, including EMP, to improve patient care and as a learning tool for clinicians.

¶ 40    Defendants asserted Otwell's affidavit demonstrated the document at issue "clearly falls within the privilege set forth in [N.C.G.S.] § 90-21.22A for medical review committee documentation." However, nowhere in his affidavit does Otwell state the names of the members of the committee or their status as health care providers licensed under Chapter 90 of the North Carolina General Statutes. While arguments alone would not carry Defendants' burden as they are not evidence, it is

important to note that at no point in their arguments at the trial court or on appeal have Defendants argued that the committee is "composed of health care providers licensed under [Chapter 90.]" N.C.G.S. § 90-21.22A(a)(1) (2019). By failing to include information plainly required for an assertion of medical review committee privilege under N.C.G.S. § 90-21.22A, Defendants did not meet their burden of production, much less any burden of proof, and are not entitled to the privilege they seek. For this reason, I would affirm the Order.

### C. Defendants' "Requested" Findings Concerning N.C.G.S. § 90-21.22A

The Majority states "[t]he trial court did not make the requested findings of fact or conclusions concerning [the] statutory elements [in N.C.G.S. § 90-21.22A]" and holds the Order must be "remanded for factual findings and conclusions." *Supra* at ¶¶ 22, 24. I disagree. Defendants failed to make a specific request to the trial court for findings of fact and the trial court was under no obligation to provide findings of fact in the Order. For these reasons, it is unnecessary to remand the Order to the trial court.

Rule 52 of the North Carolina Rules of Civil Procedure, which governs findings by a trial court, provides:

> Findings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu *only when*

> *requested by a party* and as provided by Rule 41(b).[2]
> Similarly, findings of fact and conclusions of law are
> necessary on the granting or denying of a preliminary
> injunction or any other provisional remedy only when
> required by statute expressly relating to such remedy or
> requested by a party.

N.C.G.S. § 1A-1, Rule 52(a)(2) (2019) (emphasis added). Citing our Supreme Court's

decision in *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980), the Majority

asserts that "[w]hen requested, the trial court's findings of fact and conclusions of law

must be sufficiently detailed to allow for meaningful appellate review." *Supra* at ¶

22. However, the Majority's reliance on *Coble* is taken out of context.

¶ 43        In *Coble*, the defendant challenged a trial court's order requiring her to provide

partial child support on the grounds that she was capable of contributing child

support payments and the plaintiff was entitled to contribution from her. *Coble*, 300

N.C. at 709, 268 S.E.2d at 187. Our Supreme Court remanded the case for further

evidentiary findings and stated:

> [T]he requirement that the [trial] court make findings of

---

[2] Rule 41(b) of the North Carolina Rules of Civil Procedure, which specifically pertains to the dismissal of actions, provides: "After the plaintiff . . . has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The [trial] court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the [trial] court renders judgment on the merits against the plaintiff, the [trial] court shall make findings [of fact] as provided in Rule 52(a)." N.C.G.S. § 1A-1, Rule 41(b) (2019). Here, the trial court entered an interlocutory order; it did not grant a motion to dismiss the proceedings. Thus, the trial court was not required to make findings of fact in its Order under Rule 41(b).

those specific facts which support its ultimate disposition of the case is . . . to allow the appellate courts to perform their proper function in the judicial system.

Under [N.C.G.S. § 50-13.4(c)] an order for child support must be based on the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to meet the reasonable needs of the child and (2) the relative ability of the parties to provide that amount. *These conclusions* must themselves be based upon factual *findings* specific enough to indicate to the appellate court that the judge below took due regard of the particular estates, earnings, conditions, and accustomed standard of living of both the child and the parents.

. . . .

Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment.

*Id.* at 712, 714, 268 S.E.2d at 1889, 190. (citations and marks omitted) (emphasis added). This language demonstrates the order in *Coble* was remanded for "further evidentiary findings" due to the trial court's failure to comply with the specific requirements for an order for child support under N.C.G.S. § 50-13.4(c). *Id.* at 714, 268 S.E.2d at 190. Given that the present case does not involve an order under N.C.G.S. § 50-13.4(c), the Majority improperly relies on *Coble* in support of a premise for which it does not stand.

¶ 44        Further, contrary to the Majority's assertion (without reference to the Record), Defendants did not specifically request that the trial court make any findings of fact

at the hearing held on 31 January 2020. *Supra* at ¶ 23. Defense Counsel had the

following exchange with the trial court:

> THE COURT: . . . . I'm going to direct that that document
> be provided to [] [P]laintiff. Now, at this time, I'll retain it
> under seal (clears throat) in the file . . . .
>
> [DEFENSE COUNSEL]: Well, Your Honor, that's what I
> wanted to clarify because as you know the, uh, legitimate
> and bona fide assertion of a privilege, even is – is not an
> interlocutory appeal. So, I just need – if the [c]ourt can
> clarify and perhaps this can be worked out, whether you
> are ruling the privilege was waived, the privilege doesn't
> apply, the privilege is – somehow defeated so that we can
> establish the parameters of the argument for [the] Court of
> Appeals ---
>
> THE COURT: Uh-huh.
>
> [DEFENSE COUNSEL]: --- if that should be the case.
>
> . . .
>
> [PLAINTIFF'S COUNSEL]: Your Honor, not to object, but
> it may help if the question is posed as, "Are you granting
> the [m]otion for 37(b) to enforce an existing order?"
>
> THE COURT: Yes, yes.
>
> [DEFENSE COUNSEL:] So, you'll – so, if that – so, the
> [c]ourt's order, as I understand it is that the peer review
> privilege that was identified in the original privilege log
> was the subject of the or- of the argument before Judge
> Ervin is overruled and it is – the privilege is (inaudible) as
> to this document, that you have found?
>
> THE COURT: The – what my ruling is specifically is that
> the issues before me today were encompassed by the order
> of Judge Ervin, and therefore my order is pursuant to Rule

37(b) that, um, [] [P]laintiff is entitled to enforce the order of Judge Ervin and that enforcement will require the production of this particular document.

. . . .

[DEFENSE COUNSEL]: . . . . So, you're saying you're basing – you're enforcing his prior ruling, even though our position is it was a different document that we were arguing about in front of him?  You're saying it was the same document and the argument ---

THE COURT: I'm not saying it's the same document.  I'm saying that this document was responsive to the request for discovery that were [sic] before Judge Ervin at that time. So, that in response to those discovery requests, this document should have been identified and if a privilege was claimed, it should've been asserted as to this particular document.

[DEFENSE COUNSEL]: Okay.  Because today we've had a lot of arguments about the nature – we've had arguments about the nature of the committee that reviewed it in the system and all that. I just want to know if that's going to be part of the issue that's going to be taken into – that could be potentially taken up.  I don't know. I assume my client is going to want to parti- protect their – their medical review committee and that's not casting (inaudible) on anyone in this room ---

THE COURT: I know.

[DEFENSE COUNSEL]: --- I'm just saying, I assume that's going to be their position.

THE COURT: Sure.

[DEFENSE COUNSEL]: So, it needs to be as – as clear as we can get it.  So, you know, I don't know if [Plaintiff's Counsel] and I can go back and forth and find something

that would – that would satisfy, Your Honor.

THE COURT: Yeah. Why don't – y'all [Defense Counsel and Plaintiff's Counsel] work on the order and I'll take a look at what you draft, and we'll go from there. . . .

. . . .

[DEFENSE COUNSEL]: Is it your position it's the same doc – because he was looking at a document and he ordered it to be produced and we produced it ---

THE COURT: Yeah.

[DEFENSE COUNSEL]: --- and now we're being told that we didn't comply with his order by producing a different document. So, that's what I'm trying to figure out how to – how to craft this. I understand the [c]ourt's ruling, I just want to put it in a box where I can explain it.

THE COURT: Yeah, I don't know that I can answer that question until I can see each version of the proposed orders.

. . . .

THE COURT: All right. Anything else we need to address?

[DEFENSE COUNSEL]: No.

¶ 45    This exchange demonstrates that Defense Counsel sought clarification pertaining to the trial court's ruling on the privilege to "establish the parameters of the argument" for an appeal, and stated that he "[understood] the [c]ourt's ruling," but wanted "to put it in a box where [he could] explain it." When the trial court declined to answer Defense Counsel's questions at the time, and asked if anything else needed to be addressed, Defense Counsel replied "[n]o." Based on this exchange,

it is apparent that Defendants only requested detailed conclusions of law, but made no specific request for the trial court to make findings of fact in accordance with Rule 52, and accordingly, the trial court was under no obligation to make such findings. *See Brown v. Brown*, 47 N.C. App. 323, 325, 267 S.E.2d 345, 347 (1980) ("[T]he record fails to show that [the] defendant requested [] findings [of fact] . . . . Absent request, the [trial] court is not required to find facts . . . ."); *Kolendo v. Kolendo*, 36 N.C. App. 385, 386, 243 S.E.2d 907, 908 (1978) ("[I]f no request is made by the parties to a hearing on a motion, then the trial [court] is not required to find the facts upon which he bases his ruling.").

As no findings of fact were specifically requested by Defendants, and were not required by statute, we must "presume[] that the [trial] court on proper evidence found facts to support its judgment." *Brown*, 47 N.C. App. at 325, 267 S.E.2d at 347. Adopting this presumption, I would hold it is patently unnecessary to remand this matter for further evidentiary findings.

## **CONCLUSION**

Defendants failed to include the document at issue in the Record on appeal, send it as a documentary exhibit, or provide it under seal. This failure was a violation of the appellate rules, and due to the severe impact on our ability to conduct meaningful appellate review, Defendants' noncompliance rose to the level of a substantial failure and gross violation. Dismissal is the appropriate remedy under

Rule 34, and the circumstances of this case do not justify invoking Rule 2.

Setting aside this violation, as the Majority implicitly does, I reach the merits and fully dissent from the Majority's analysis. I would hold the Order should be affirmed. Defendants failed to produce evidence that they are entitled to the medical review committee privilege set forth in N.C.G.S. § 90-21.22A. In addition, Defendants did not specifically request that the trial court make any findings of fact and the trial court was not obligated under any authority to do so. For these reasons, I disagree with the Majority's decision to remand for further findings and respectfully dissent.