IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-410

 No. COA20-724

 Filed 3 August 2021

 Mecklenburg County, No. 18 CVS 8382

 HANIA H. WILLIAMS as Executor and Administrator of the Estate of PATRICK
 WILLIAMS, Plaintiff,

 v.

 MARCHELLE ISYK ALLEN, P.A., NILES ANTHONY RAINS, M.D., BRONWYN
 LOUIS YOUNG II, M.D., EMERGENCY MEDICINE PHYSICIANS OF
 MECKLENBURG COUNTY, PLLC d/b/a US ACUTE CARE SOLUTIONS, LLC, C.
 PETER CHANG, M.D., CHARLOTTE RADIOLOGY, P.A., THE CHARLOTTE-
 MECKLENBURG HOSPITAL AUTHORITY d/b/a CAROLINAS HEALTHCARE
 SYSTEM or ATRIUM HEALTH, Defendants.

 Appeal by defendants from order entered 24 March 2020 by Judge Forrest

 Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 25

 May 2021.

 Knott & Boyle, PLLC, by W. Ellis Boyle, for plaintiff-appellee.

 Dickie, McCamey & Chilcote, P.C., by John T. Holden, for defendants-
 appellants Marchelle Allen and Emergency Medicine Physicians of
 Mecklenburg County, PLLC.

 TYSON, Judge.

¶1 Marchelle Isyk Allen, P.A. and Emergency Medicine Physicians of

 Mecklenburg County, PLLC (“EMP”) (collectively “Defendants”) appeal from an order

 filed 24 March 2020 compelling production of a document claimed as privileged by
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 Defendants. We remand for additional findings of fact and conclusions of law.

 I. Background

¶2 Patrick Williams (“Williams”) suffered back, stomach, and hip pains, which

 worsened throughout the morning and afternoon of 6 May 2016. Williams’ wife,

 Hania H. Williams, (“Plaintiff”) took Williams to the Piedmont Urgent Care-Baxter

 in Fort Mill, South Carolina.

¶3 Williams could not get out of the car at Piedmont Urgent Care-Baxter. After

 speaking with Plaintiff, staff at Piedmont Urgent Care-Baxter called 911 for

 assistance. Williams’ condition was not evaluated by a healthcare provider at

 Piedmont Urgent Care-Baxter. Emergency Medical Services responded to Piedmont

 Urgent Care-Baxter, moved Williams into an ambulance, and transported him to the

 emergency department (“ED”) at Carolinas Medical Center Pineville Hospital (“CMC-

 Pineville”). Williams arrived in the ED at 3:52 p.m.

¶4 Dr. Brownyn Louis Young, II ordered 7.5 mg of oral hydrocodone and 600 mg

 of ibuprofen for Williams. The record does not show whether these medicines were

 issued pursuant to “standing orders” by Dr. Young, or if he had evaluated Williams

 prior to these orders being administered. Around 4:50 p.m., Physician Assistant

 Marchelle Allen (“Allen”) met with and evaluated Williams. Williams reported he

 was experiencing increasing lower back pain that radiated down his left leg. Allen

 ordered 4 mg of morphine, 10 mg of Decadron, 10 mg of Flexeril, 4 mg of Zofran, and
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 an x-ray to be administered to Williams’ spine.

¶5 Dr. C. Peter Chang read the x-ray and reported “no acute osseous abnormality”

 and “unusual linear calcifications seen to the right and left of the lumbar spine along

 the retroperitoneum likely vascular in nature.” Dr. Chang noted the x-rays were

 “negative for acute pathology, . . . negative for acute bony abnormality . . . [and] show

 vascular calcifications.”

¶6 Allen did not order further diagnostic tests for Williams. Williams was

 diagnosed with “left lumbar radiculopathy.” Allen ordered prescriptions for Flexeril

 and hydrocodone. Williams was discharged from CMC-Pineville with instructions to

 schedule an office visit with OrthoCarolina “within 2-4 days.” Dr. Niles Anthony

 Rains signed Williams’ record of the treatment provided by Allen on 7 May 2016 at

 6:36 a.m.

¶7 Once home, Williams took the prescribed hydrocodone every six hours, but his

 pain persisted. Williams also developed abdominal pains. Williams returned to the

 CMC-Pineville ED on 7 May 2016 at 9:56 p.m. Williams presented with low blood

 pressure and reported severe abdominal pain.

¶8 Dr. Rains ordered a CT angiogram of Williams’ chest, abdomen, and pelvis with

 an IV contrast. Dr. Charlie McLaughlin read the images and diagnosed Williams

 with a ruptured abdominal aortic aneurism measuring 12 x 9.7 centimeters. Dr.

 Rains contacted the ED at Carolinas Medical Center Main (“CMC-Main”) about
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 transferring Williams for immediate surgical repair of the ruptured aneurism.

 Williams was transferred to CMC-Main by helicopter. Surgery to repair the ruptured

 aneurism was unsuccessful in saving Williams’ life. Williams was pronounced dead

 at 3:24 a.m. on 8 May 2016.

¶9 Dr. Rains spoke with Allen on 9 May 2016 and informed her of Williams’ death.

 Dr. Rains also relayed to Allen Plaintiff’s 7 May 2016 statement to emergency

 department staff if anything should happen to Williams, she would be filing a claim

 against the personnel who treated him during his 6 May 2016 visit. Dr. Rains

 instructed Allen to memorialize her interactions with and treatment of Williams on

 an electronic form provided by her EMP group employer.

¶ 10 Williams’ estate brought this action for wrongful death on 2 May 2018, and

 Plaintiff asserted claim for loss of consortium. Plaintiff requested production of

 documents relating to investigation by Defendants and any information related to

 Defendants’ interactions with and their care provided to Williams.

¶ 11 Allen submitted a privilege log identifying a four-page “diary” entry she had

 written on 10 May 2016, concerning the event claiming: “Work Product, and Prepared

 by the Defendants in anticipation of litigation, peer review.” Plaintiff filed a motion

 to compel on 17 July 2019 pursuant to N.C. Gen. Stat. § 1A-1, Rule 37(a) (2019).

 Plaintiff sought the production of a four-page document identified as typed notes

 Allen had created 10 May 2016, as identified in the privilege log produced on 11 July
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 2019. After hearing from the parties and examining the document at issue, the trial

 court granted Plaintiff’s motion to compel and the four-page document was delivered

 to Plaintiff.

¶ 12 Allen was deposed on 30 October 2019. During Allen’s deposition, her “diary”

 entry was presented to her, and the existence of an additional document was

 discovered. This additional two-page document was not included in Defendants’

 privilege log, and it was withheld from disclosure due to Defendants’ claim of Medical

 Review Committee and other privileges under N.C. Gen. Stat. § 90-21.22A (2019).

 Allen created this document utilizing EMP’s company website and submitted it to

 risk management.

¶ 13 Plaintiff filed a motion to enforce her previous motion to compel, pursuant to

 N.C. Gen. Stat. § 1A-1, Rule 37(b) (2019). In her motion, Plaintiff argued Allen’s diary

 entry that was eventually produced was not in fact what they were seeking in their

 first motion to compel hearing. Plaintiff alleged she was seeking this second

 document submitted to risk management and the arguments made by Defendants’

 counsel at the motion to compel hearing about privilege and peer review were

 asserted to this second document. Plaintiff argued the asserted privilege could not

 relate to Allen’s diary entry. After hearing from the parties, reviewing the affidavits,

 and conducting an in-camera review of the disputed second document, the trial court

 granted the motion, but ordered the subject document to be kept under seal, pending
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 appeal. The trial court denied Plaintiff’s sanctions motion and awarded no fees or

 sanctions. Defendants appealed.

 II. Jurisdiction

¶ 14 “An order compelling discovery is generally not immediately appealable

 because it is interlocutory and does not affect a substantial right that would be lost if

 the ruling were not reviewed before final judgment.” Sharpe v. Worland, 351 N.C.

 159, 163, 522 S.E.2d 577, 579 (1999). Our Court has held: “As a general proposition,

 only final judgments, as opposed to interlocutory orders, may be appealed to the

 appellate courts.” Hamilton v. Mortg. Info. Servs., Inc., 212 N.C. App. 73, 77, 711

 S.E.2d 185, 188 (2011) (citations omitted).

¶ 15 “Appeals from interlocutory orders are only available in exceptional cases.” Id.

 (citation and internal quotation marks omitted). Our rules “against interlocutory

 appeals seek[] to prevent fragmentary, premature and unnecessary appeals by

 allowing the trial court to bring a case to final judgment before its presentation to the

 appellate courts.” Turner v. Norfolk S. Corp., 137 N.C. App. 138, 141, 526 S.E.2d 666,

 669, (2000) (citation omitted).

¶ 16 “No hard and fast rules exist for determining which appeals affect a

 substantial right. Rather, such decisions usually require consideration of the facts of

 the particular case.” Estrada v. Jaques, 70 N.C. App. 627, 640, 321 S.E.2d 240, 249

 (1984) (citations omitted).
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

¶ 17 An order compelling or enforcing discovery or for sanctions may be

 immediately appealable if it affects a substantial right under N.C. Gen. Stat. §§ 1-

 277 or 7A-27(b)(3)a (2019). A substantial right is invoked when a party asserts a

 statutory privilege, which directly relates to the matter to be disclosed, and the

 assertion of the privilege is not “frivolous or insubstantial.” K2 Asia Ventures v.

 Trota, 215 N.C. App. 443, 447, 717 S.E.2d 1, 4 (2011) (citation omitted). Orders

 compelling discovery of materials asserting protection by the medical review privilege

 affects a substantial right and are immediately reviewable on appeal. Hammond v.

 Saini, 229 N.C. App. 359, 362, 748 S.E.2d 585, 588 (2013), aff’d as modified, 367 N.C.

 607, 766 S.E.2d 590 (2014). This issue is properly before this Court.

 III. Issue

¶ 18 Defendants argue the trial court erred by granting Plaintiff’s motion to enforce

 its previous motion to compel production.

 IV. Motion to Compel

 A. Standard of Review

¶ 19 “Whether or not the party’s motion to compel discovery should be granted or

 denied is within the trial court’s sound discretion and will not be reversed absent an

 abuse of discretion.” Wagoner v. Elkin City Schools’ Bd. of Education, 113 N.C. App.

 579, 585, 440 S.E.2d 119, 123, disc. rev. denied, 336 N.C. 615, 447 S.E.2d 414 (1994).

 “To demonstrate an abuse of discretion, the appellant must show that the trial court’s
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 ruling was manifestly unsupported by reason, or could not be the product of a

 reasoned decision.” Nationwide Mut. Fire Ins. Co. v. Bourlon, 172 N.C. App. 595, 601,

 617 S.E.2d 40, 45 (2005) (internal citation omitted), aff’d per curiam, 360 N.C. 356,

 625 S.E.2d 779 (2006). Questions of statutory interpretation are reviewed de novo.

 State v. Mackey, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011).

 B. Analysis

¶ 20 The medical review committee privilege is “designed to encourage candor and

 objectivity in the internal workings of medical review committees.” Shelton v.

 Morehead Mem’l Hosp., 318 N.C. 76, 83, 347 S.E.2d 824, 829 (1986). The party

 asserting the privilege bears the burden of proof. Wachovia Bank v. Clean River

 Corp., 178 N.C. App. 528, 531, 631 S.E.2d 879, 882 (2006).

¶ 21 Defendants argue the “fundamental and sole requirement for members of a

 medical review committee under N.C. Gen. Stat. § 90-21.22A” is that they be licensed.

 To claim the medical review committee privilege under the statute, a claimant must

 demonstrate the committee is composed of “healthcare providers licensed under this

 chapter,” the committee be “formed for the purpose of evaluating the quality of, cost

 of, or necessity for health care services, including provider credentialing,” and the

 documents must be “produced or presented” by the medical review committee. N.C.

 Gen. Stat. § 90-21.22A (2019).

¶ 22 The trial court did not make the requested findings of fact or conclusions
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

 concerning these statutory elements. When asked specifically to do so by counsel, the

 trial court declined to rule about whether the peer review privilege applied or not.

 When requested, the trial court’s findings of fact and conclusions of law must be

 sufficiently detailed to allow for meaningful appellate review. Coble v. Coble, 300

 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

¶ 23 Defendants’ counsel correctly sought clarification of the ruling and requested

 the trial court to make specific findings and conclusions. “Without setting forth

 findings of fact, this Court cannot conduct a meaningful review of the conclusions of

 law and test the correctness of the trial court’s judgment.” Earl v. CGR Dev. Corp.,

 242 N.C. App. 20, 24, 773 S.E.2d 551, 554 (2015) (citations, alternations, and internal

 quotation marks omitted).

¶ 24 The order of the trial court is remanded for factual findings and conclusions of

 whether Defendants carried their burden to demonstrate the peer or medical review

 committee they are relying on is composed exclusively of licensed providers under

 Chapter 90, formed for the purpose of evaluating the quality of the healthcare

 provided, and whether Allen’s document was actually “produced or presented” at the

 request of her medical superior to the medical review committee in order to properly

 invoke the privilege under the statute. See N.C. Gen. Stat. § 90-21.22A.

 V. Conclusion

¶ 25 The trial court failed to make the Defendant’s requested and requisite findings
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 Opinion of the Court

of fact and conclusions for meaningful appellate review of the Defendants’ burden to

invoke the privilege. Id. Upon remand, the trial court is free to hear arguments or

receive additional material to make and enter factual findings and conclusions

consistent with the requirements of N.C. Gen. Stat. § 90-21.22A. It is so ordered.

 REMANDED.

 Judge JACKSON concurs.

 Judge MURPHY dissents with separate opinion.
 No. COA20-724 – Williams v. Allen

 MURPHY, Judge, dissenting.

¶ 26 Without the document at issue contained in the Record before us, we cannot

 meaningfully review the trial court’s order granting enforcement of Plaintiff’s

 preexisting motion to compel. For that reason, I would hold Defendants waived this

 issue by failing to comply with the requirements established by our rules of appellate

 procedure, and dismiss the appeal on those grounds.

¶ 27 Even setting aside this error by Defendants, I would nonetheless affirm the

 trial court’s order, and hold Defendants failed to satisfy their burden of production in

 asserting the medical review committee privilege provided by N.C.G.S. § 90-21.22A.

 Further, contrary to the Majority’s holding, the trial court was not obligated to make

 specific findings of fact in its order concerning the statutory elements of Defendants’

 medical review committee privilege claim. Consequently, I find it unnecessary to

 remand this matter to the trial court. For all of these reasons, I must respectfully

 dissent.

 ANALYSIS

 A. Insufficient Record on Appeal

¶ 28 Defendants appeal the trial court’s order granting Plaintiff’s motion to enforce

 an existing motion to compel discovery pursuant to N.C.G.S. § 1A-1, Rule 37(b). After

 learning of the existence of a document in a 30 October 2019 deposition of Defendant

 Allen, Plaintiff filed a motion seeking its disclosure on 21 November 2019. The trial

 court entered an order on 24 March 2020 (the “Order”) that stated, in relevant part:
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 Plaintiff’s [m]otion for enforcement of the existing [o]rder
 pursuant to Rule 37(b) is granted. . . . The [trial] [c]ourt has
 ordered that this document that [] Defendants handed up
 under seal during the hearing be maintained under seal by
 the Clerk’s office pending the time for any appeal to be
 filed, and if appeal is taken, to remain there until the
 outcome of that appeal is completed before actually
 producing it to the other parties[.]

¶ 29 As the Majority correctly states, the Order stipulates that the document at

 issue be maintained under seal, pending appeal. Supra at ¶ 13. However, the fact

 that the document is maintained under seal does not relieve Defendants of their “duty

 . . . to ensure this Court has everything needed for a proper review of [the] issues on

 appeal.” Gilmartin v. Gilmartin, 263 N.C. App. 104, 107, 822 S.E.2d 771, 774 (2018)

 (citing State v. Davis, 191 N.C. App. 535, 539, 664 S.E.2d 21, 24 (2008)), disc. rev.

 denied, 372 N.C. 291, 826 S.E.2d 702 (2019).1

¶ 30 Rule 9 of the North Carolina Rules of Appellate Procedure, which governs the

 record on appeal, states in relevant part:

 (a) . . . . In appeals from the trial division of the General
 Court of Justice, review is solely upon the record on appeal

 1 See also Doe v. Doe, 263 N.C. App. 68, 71-72, 72 n.2, 823 S.E.2d 583, 586 & n.2 (2018)

 (reviewing a sealed court file in its entirety in camera); State v. McCoy, 228 N.C. App. 488,
 492, 745 S.E.2d 367, 370 (2013) (“During the preparation of the record on appeal, [the]
 defendant’s appellate counsel requested and obtained a copy of the sealed [document] from
 the trial court.”), disc. rev. denied, appeal dismissed, 367 N.C. 530, 762 S.E.2d 462 (2014);
 Daly v. Kelly, 272 N.C. App. 448, 453 n.7, 846 S.E.2d 830, 833 n.7 (2020) (“This Court has
 reviewed the records under seal[.]”); Premier, Inc. v. Peterson, 255 N.C. App. 347, 352, 804
 S.E.2d 599, 603 (2017) (noting “we considered all of the documents and testimony under
 seal”).
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 ....

 (1) . . . . The record on appeal in civil actions and
 special proceedings shall contain:

 ...

 e. so much of the litigation . . . as is necessary
 for an understanding of all issues presented
 on appeal . . . ;

 ...

 j. copies of all other papers filed . . . in the trial
 court which are necessary to an
 understanding of all issues presented on
 appeal unless they appear in the transcript of
 proceedings . . . ;

 ....

 (c) Presentation of Testimonial Evidence and Other
 Proceedings. . . . .

 ....

 (4) Presentation of Discovery Materials. . . . . In all
 instances in which discovery materials are
 considered by the trial tribunal, other than as
 evidence offered at trial, the following procedures for
 presenting those materials to the appellate court
 shall be used: . . . . discovery materials, including . .
 . motions to produce, and the like, pertinent to issues
 presented on appeal, may be set out in the record on
 appeal or may be sent up as documentary exhibits.

N.C. R. App. P. 9(a)(1)(e), (a)(1)(j), (c)(4) (2021). Notwithstanding the fact this sealed

document is central to our ability to meaningfully review the issues presented in this

appeal, Defendants failed to include it in the Record, send it as a documentary
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 exhibit, or provide it under seal.

¶ 31 The failure to follow the rules of appellate procedure “ordinarily forfeit[s] [a

 party’s] right to review on the merits.” Dogwood Dev. & Mgmt. Co. v. White Oak

 Transp. Co., 362 N.C. 191, 194, 657 S.E.2d 361, 363 (2008). “[T]he appellate court

 may not consider sanctions of any sort [including dismissal] when a party’s

 noncompliance with nonjurisdictional requirements of the [appellate] rules does not

 rise to the level of a ‘substantial failure’ or ‘gross violation.’” Id. at 199, 657 S.E.2d at

 366. “In determining whether a party’s noncompliance with the appellate rules rises

 to the level of a substantial failure or gross violation, the [appellate] court may

 consider, among other factors, whether and to what extent the noncompliance

 impairs the court’s task of review.” Id. at 200, 657 S.E.2d at 366.

¶ 32 Here, Defendants’ Appellate Rules violation is the failure to include the

 document at issue in the Record on appeal. In the absence of this document, “we

 cannot, without engaging in speculation,” assess the merits of the Order granting

 Plaintiff’s motion, or the claim by Defendants that the document is covered by medical

 review committee privilege under N.C.G.S. § 90-21.22A. CRLP Durham, LP v.

 Durham City/Cty. Bd. of Adjustment, 210 N.C. App. 203, 212, 706 S.E.2d 317, 323

 (“From the record before us, we cannot [review the issue presented], without engaging

 in speculation . . . as [the] petitioner failed to include in the record on appeal any

 portion of the [document at issue].”), disc. rev. denied, 365 N.C. 348, 717 S.E.2d 744
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 (2011). This violation severely impairs our ability to conduct meaningful appellate

 review and rises to the level of a “substantial failure” and “gross violation.” Dogwood,

 362 N.C. at 199, 657 S.E.2d at 366.

¶ 33 Upon concluding the noncompliance rises to a level of a substantial failure or

 gross violation, the next step is to “determine which, if any, sanction under Rule 34(b)

 should be imposed. [] [I]f . . . dismissal is the appropriate sanction, [the final step is

 to] consider whether the circumstances of the case justify invoking Rule 2 to reach

 the merits of the appeal.” Id. at 201, 657 S.E.2d at 367.

¶ 34 Rule 34(b) of the North Carolina Rules of Appellate Procedure provides:

 (b) A court of the appellate division may impose one or more
 of the following sanctions:

 (1) dismissal of the appeal;

 (2) monetary damages including, but not limited to,

 a. single or double costs,

 b. damages occasioned by delay,

 c. reasonable expenses, including reasonable
 attorney fees, incurred because of the
 frivolous appeal or proceeding;

 (3) any other sanction deemed just and proper.

 N.C. R. App. P. 34(b) (2021). Dismissal is appropriate here because without the

 document at issue contained in the Record, we cannot determine whether the trial

 court erred in granting Plaintiff’s motion to enforce the existing motion to compel.
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 “[I]n a case such as this, and in order to ensure better compliance with the appellate

 rules, . . . dismissal is appropriate and justified.” Ramsey v. Ramsey, 264 N.C. App.

 431, 437, 826 S.E.2d 459, 464 (2019). The only way we could reach the merits of this

 case is by invoking Rule 2.

¶ 35 Rule 2 “may only [be invoked] on rare occasions and under exceptional

 circumstances to prevent manifest injustice to a party, or to expedite decision in the

 public interest[.]” Dogwood, 362 N.C. at 201, 657 S.E.2d at 367 (marks and citations

 omitted). The decision whether to invoke Rule 2 is purely discretionary and is “to be

 limited to occasions in which a fundamental purpose of the appellate rules is at stake,

 which will necessarily be rare occasions.” State v. Hart, 361 N.C. 309, 316, 644 S.E.2d

 201, 205 (2007) (marks omitted). Nothing in this matter demonstrates any

 “exceptional circumstances” to suspend or vary the appellate rules. Dogwood, 362

 N.C. at 201, 657 S.E.2d at 367. The circumstances of this case do not justify invoking

 Rule 2, and I would decline to reach the merits of the case on that basis. However,

 because the Majority addresses the merits of the case and I disagree with its analysis

 and resolution, my dissent must also encompass the merits in the following sections.

 See N.C. R. App. P. 16(b) (2021) (“When the sole ground of the appeal of right is the

 existence of a dissent in the Court of Appeals, review by the Supreme Court is limited

 to a consideration of those issues that are (1) specifically set out in the dissenting

 opinion as the basis for that dissent[.]”). I would hold the Order should be affirmed
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 for the reasons discussed in Parts B and C, below.

 B. Burden of Production under N.C.G.S. § 90-21.22A

¶ 36 Even if the appeal was not dismissed for failure to produce the document at

 issue, I would nonetheless affirm the Order, as Defendants failed to produce evidence

 that they are entitled to the medical review committee privilege set forth in N.C.G.S.

 § 90-21.22A.

¶ 37 Located in Chapter 90, Article 1D of our General Statutes, N.C.G.S. § 90-

 21.22A provides:

 (a) As used in this section, the following terms mean:

 (1) “Medical review committee.” - A committee composed of
 health care providers licensed under this Chapter [90] that
 is formed for the purpose of evaluating the quality of, cost
 of, or necessity for health care services, including provider
 credentialing. “Medical review committee” does not mean
 a medical review committee established under [N.C.G.S. §]
 131E-95.

 (2) “Quality assurance committee.” - Risk management
 employees of an insurer licensed to write medical
 professional liability insurance in this State, who work in
 collaboration with health care providers licensed under
 this Chapter, and insured by that insurer, to evaluate and
 improve the quality of health care services.

 (b) A member of a duly appointed medical review or quality
 assurance committee who acts without malice or fraud
 shall not be subject to liability for damages in any civil
 action on account of any act, statement, or proceeding
 undertaken, made, or performed within the scope of the
 functions of the committee.
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 (c) The proceedings of a medical review or quality
 assurance committee, the records and materials it
 produces, and the materials it considers shall be
 confidential and not considered public records within the
 meaning of [N.C.G.S. §§] 132-1, 131E-309, or 58-2-100; and
 shall not be subject to discovery or introduction into
 evidence in any civil action against a provider of health
 care services who directly provides services and is licensed
 under this Chapter . . . , which civil action results from
 matters that are the subject of evaluation and review by
 the committee. . . . . However, information, documents, or
 records otherwise available are not immune from discovery
 or use in a civil action merely because they were presented
 during proceedings of the committee. . . . .

 (d) This section applies to a medical review committee,
 including a medical review committee appointed by one of
 the entities licensed under Articles 1 through 67 of Chapter
 58 of the General Statutes.

 (e) Subsection (c) of this section does not apply to
 proceedings initiated under [N.C.G.S. §] 58-50-61 or
 [N.C.G.S. §] 58-50-62.

 N.C.G.S. § 90-21.22A (2019) (emphasis added).

¶ 38 The parties dispute the burden required to demonstrate compliance with

 N.C.G.S. § 90-21.22A. Specifically, Plaintiff argues “Defendants had to affirmatively

 prove that all members of its nation-wide central medical review committee . . . were

 Chapter-90-licensed health care providers under North Carolina law.” Defendants

 assert that because the term “health care provider” as used in N.C.G.S. § 90-

 21.22A(a)(1) is not defined in Chapter 90 general definitions, we must look to

 definitions contained in other articles to interpret its meaning. Defendants
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

specifically point to the definition of “health care provider” in N.C.G.S. § 90-21.11,

located in Chapter 90, Article 1B of our General Statutes, which states, in pertinent

part:

 The following definitions apply in this Article [1B]:

 (1) Health care provider. - Without limitation, any of the
 following:

 a. A person who pursuant to the provisions of Chapter 90
 of the General Statutes is licensed, or is otherwise
 registered or certified to engage in the practice of or
 otherwise performs duties associated with any of the
 following: medicine, surgery, dentistry, pharmacy,
 optometry, midwifery, osteopathy, podiatry, chiropractic,
 radiology, nursing, physiotherapy, pathology,
 anesthesiology, anesthesia, laboratory analysis, rendering
 assistance to a physician, dental hygiene, psychiatry, or
 psychology.

N.C.G.S. § 90-21.11(1)(a) (2019) (emphasis added). Defendants’ argument is

unpersuasive, as the application of this proposed definition would contravene basic

principles of statutory interpretation.

 Statutory interpretation properly begins with an
 examination of the plain words of the statute. If the
 statutory language is clear and unambiguous, the court
 eschews statutory construction in favor of giving the words
 their plain and definite meaning. However, where the
 statute is ambiguous or unclear as to its meaning, the
 courts must interpret the statute to give effect to the
 legislative intent. Canons of statutory interpretation are
 only employed if the language of the statute is ambiguous
 or lacks precision, or is fairly susceptible of two or more
 meanings.
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 JVC Enters. v. City of Concord, 376 N.C. 782, 2021-NCSC-14, ¶ 10 (citations and

 marks omitted). The plain words of N.C.G.S. § 90-21.22A indicate a medical review

 committee must be composed of “health care providers licensed under [Chapter 90.]”

 N.C.G.S. § 90-21.22A(a)(1) (2019). The statute is clear and unambiguous–it contains

 no contradictions, and it is not “fairly susceptible of two or more meanings.” JVC,

 376 N.C. 782, 2021-NCSC-14 at ¶ 10. Consequently, we must interpret its words in

 accordance with their plain and definite meaning, and need not look to definitions in

 other articles, consider legislative intent, or employ other canons of statutory

 construction. Id. By its plain language, N.C.G.S. § 90-21.22A requires members of a

 medical review committee to be health care providers licensed under Chapter 90, to

 wit, to be licensed by North Carolina. In addition, N.C.G.S. § 90-21.11 explicitly

 states “[t]he following definitions apply in this Article[,]” and contains no indication

 that the definition of “health care provider” located in Article 1B in N.C.G.S. § 90-

 21.11(1) would apply to other articles within Chapter 90. N.C.G.S. § 90-21.11 (2019)

 (emphasis added).

¶ 39 “[D]efendants, as the parties objecting to the disclosure of the [document] on

 the basis of this privilege, bear the burden of establishing that [P]laintiff’s discovery

 request[] fall[s] within the scope of the privilege.” Hammond v. Saini, 229 N.C. App.

 359, 365, 748 S.E.2d 585, 589 (2013), modified and aff’d by 367 N.C. 607, 766 S.E.2d

 590 (2014). To satisfy their burden in claiming the medical review committee
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

privilege, Defendants needed to prove to the trial court’s satisfaction that every

member of the qualifying medical review committee is a health care provider licensed

under Chapter 90. N.C.G.S. § 90-21.22A(a)(1) (2019). Defendants attempted to meet

their burden by filing an affidavit of Justin Otwell, Esq. (“Otwell”), the Vice President

of Claims and Risk Management at an affiliate corporation of EMP. Otwell’s affidavit

“sets forth the procedure by which EMP set up its medical review committee and how

materials are submitted to that committee.” Otwell’s affidavit states:

 At the time that Mr. Williams was seen by Ms. Allen, EMP
 had a central medical review committee. This was a
 committee composed of licensed healthcare providers
 which was formed for the purpose of evaluating the quality,
 costs and necessity for the healthcare services provided by
 EMP. It also was created and empowered to evaluate and
 improve the quality of healthcare services provided by
 EMP’s doctors and physician’s assistants.

 As part of the work of the medical review committee,
 providers could, in appropriate circumstances, provide
 information to the committee about patient care for
 evaluation by the committee. One way such information
 could be supplied to the committee in 2016 was via a
 computer program available at EMP locations throughout
 the country. A provider would enter information about the
 patient, and it would be transmitted to the medical review
 committee for evaluation.

 In the case of Mr. Williams, Ms. Allen supplied information
 to the medical review committee utilizing a computer
 terminal at CMC Pineville hospital. This information was
 supplied to the committee via a computer generated form.
 Attached to this affidavit as “Sealed Exhibit A” is the form
 generated by Ms. Allen in May 2016 and submitted to the
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 committee with information about Mr. Williams. “Sealed
 Exhibit A” was used as part of the proceedings of the
 medical review committee at EMP and was generated for
 the purposes of that committee. This document was not
 created as part of the medical record in this case, and it is
 not a publicly available document.

 This document was provided to John Holden, our North
 Carolina counsel on [5 November 2019], at his request.

 It is my understanding that the activities and proceedings
 of a medical review committee, including the materials it
 considers, shall be confidential and are not public records
 under [N.C.G.S. §] 90-21.22A. The document attached to
 this affidavit as “Sealed Exhibit A” is part of the
 proceedings of the committee and was generated for the use
 of the committee in evaluating patient care. As such, I
 would respectfully request that it be withheld from
 discovery.

 It is imperative that the actions of medical review
 committees be confidential and that the materials
 considered and generated by them not be utilized in
 litigation, to ensure full openness in the activities of the
 committee. These committees are utilized by medical
 organizations, including EMP, to improve patient care and
 as a learning tool for clinicians.

¶ 40 Defendants asserted Otwell’s affidavit demonstrated the document at issue

 “clearly falls within the privilege set forth in [N.C.G.S.] § 90-21.22A for medical

 review committee documentation.” However, nowhere in his affidavit does Otwell

 state the names of the members of the committee or their status as health care

 providers licensed under Chapter 90 of the North Carolina General Statutes. While

 arguments alone would not carry Defendants’ burden as they are not evidence, it is
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 important to note that at no point in their arguments at the trial court or on appeal

 have Defendants argued that the committee is “composed of health care providers

 licensed under [Chapter 90.]” N.C.G.S. § 90-21.22A(a)(1) (2019). By failing to include

 information plainly required for an assertion of medical review committee privilege

 under N.C.G.S. § 90-21.22A, Defendants did not meet their burden of production,

 much less any burden of proof, and are not entitled to the privilege they seek. For

 this reason, I would affirm the Order.

 C. Defendants’ “Requested” Findings Concerning N.C.G.S. § 90-21.22A

¶ 41 The Majority states “[t]he trial court did not make the requested findings of

 fact or conclusions concerning [the] statutory elements [in N.C.G.S. § 90-21.22A]” and

 holds the Order must be “remanded for factual findings and conclusions.” Supra at

 ¶¶ 22, 24. I disagree. Defendants failed to make a specific request to the trial court

 for findings of fact and the trial court was under no obligation to provide findings of

 fact in the Order. For these reasons, it is unnecessary to remand the Order to the

 trial court.

¶ 42 Rule 52 of the North Carolina Rules of Civil Procedure, which governs findings

 by a trial court, provides:

 Findings of fact and conclusions of law are necessary on
 decisions of any motion or order ex mero motu only when
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 requested by a party and as provided by Rule 41(b).[2]
 Similarly, findings of fact and conclusions of law are
 necessary on the granting or denying of a preliminary
 injunction or any other provisional remedy only when
 required by statute expressly relating to such remedy or
 requested by a party.

 N.C.G.S. § 1A-1, Rule 52(a)(2) (2019) (emphasis added). Citing our Supreme Court’s

 decision in Coble v. Coble, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980), the Majority

 asserts that “[w]hen requested, the trial court’s findings of fact and conclusions of law

 must be sufficiently detailed to allow for meaningful appellate review.” Supra at ¶

 22. However, the Majority’s reliance on Coble is taken out of context.

¶ 43 In Coble, the defendant challenged a trial court’s order requiring her to provide

 partial child support on the grounds that she was capable of contributing child

 support payments and the plaintiff was entitled to contribution from her. Coble, 300

 N.C. at 709, 268 S.E.2d at 187. Our Supreme Court remanded the case for further

 evidentiary findings and stated:

 [T]he requirement that the [trial] court make findings of

 2 Rule 41(b) of the North Carolina Rules of Civil Procedure, which specifically pertains

 to the dismissal of actions, provides: “After the plaintiff . . . has completed the presentation
 of his evidence, the defendant, without waiving his right to offer evidence in the event the
 motion is not granted, may move for a dismissal on the ground that upon the facts and the
 law the plaintiff has shown no right to relief. The [trial] court as trier of the facts may then
 determine them and render judgment against the plaintiff or may decline to render any
 judgment until the close of all the evidence. If the [trial] court renders judgment on the
 merits against the plaintiff, the [trial] court shall make findings [of fact] as provided in Rule
 52(a).” N.C.G.S. § 1A-1, Rule 41(b) (2019). Here, the trial court entered an interlocutory
 order; it did not grant a motion to dismiss the proceedings. Thus, the trial court was not
 required to make findings of fact in its Order under Rule 41(b).
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 those specific facts which support its ultimate disposition
 of the case is . . . to allow the appellate courts to perform
 their proper function in the judicial system.

 Under [N.C.G.S. § 50-13.4(c)] an order for child support
 must be based on the interplay of the trial court’s
 conclusions of law as to (1) the amount of support necessary
 to meet the reasonable needs of the child and (2) the
 relative ability of the parties to provide that amount. These
 conclusions must themselves be based upon factual
 findings specific enough to indicate to the appellate court
 that the judge below took due regard of the particular
 estates, earnings, conditions, and accustomed standard of
 living of both the child and the parents.

 ....

 Effective appellate review of an order entered by a trial
 court sitting without a jury is largely dependent upon the
 specificity by which the order’s rationale is articulated.
 Evidence must support findings; findings must support
 conclusions; conclusions must support the judgment.

 Id. at 712, 714, 268 S.E.2d at 1889, 190. (citations and marks omitted) (emphasis

 added). This language demonstrates the order in Coble was remanded for “further

 evidentiary findings” due to the trial court’s failure to comply with the specific

 requirements for an order for child support under N.C.G.S. § 50-13.4(c). Id. at 714,

 268 S.E.2d at 190. Given that the present case does not involve an order under

 N.C.G.S. § 50-13.4(c), the Majority improperly relies on Coble in support of a premise

 for which it does not stand.

¶ 44 Further, contrary to the Majority’s assertion (without reference to the Record),

 Defendants did not specifically request that the trial court make any findings of fact
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

at the hearing held on 31 January 2020. Supra at ¶ 23. Defense Counsel had the

following exchange with the trial court:

 THE COURT: . . . . I’m going to direct that that document
 be provided to [] [P]laintiff. Now, at this time, I’ll retain it
 under seal (clears throat) in the file . . . .

 [DEFENSE COUNSEL]: Well, Your Honor, that’s what I
 wanted to clarify because as you know the, uh, legitimate
 and bona fide assertion of a privilege, even is – is not an
 interlocutory appeal. So, I just need – if the [c]ourt can
 clarify and perhaps this can be worked out, whether you
 are ruling the privilege was waived, the privilege doesn’t
 apply, the privilege is – somehow defeated so that we can
 establish the parameters of the argument for [the] Court of
 Appeals ---

 THE COURT: Uh-huh.

 [DEFENSE COUNSEL]: --- if that should be the case.

 ...

 [PLAINTIFF’S COUNSEL]: Your Honor, not to object, but
 it may help if the question is posed as, “Are you granting
 the [m]otion for 37(b) to enforce an existing order?”

 THE COURT: Yes, yes.

 [DEFENSE COUNSEL:] So, you’ll – so, if that – so, the
 [c]ourt’s order, as I understand it is that the peer review
 privilege that was identified in the original privilege log
 was the subject of the or- of the argument before Judge
 Ervin is overruled and it is – the privilege is (inaudible) as
 to this document, that you have found?

 THE COURT: The – what my ruling is specifically is that
 the issues before me today were encompassed by the order
 of Judge Ervin, and therefore my order is pursuant to Rule
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

37(b) that, um, [] [P]laintiff is entitled to enforce the order
of Judge Ervin and that enforcement will require the
production of this particular document.

....

[DEFENSE COUNSEL]: . . . . So, you’re saying you’re
basing – you’re enforcing his prior ruling, even though our
position is it was a different document that we were
arguing about in front of him? You’re saying it was the
same document and the argument ---

THE COURT: I’m not saying it’s the same document. I’m
saying that this document was responsive to the request
for discovery that were [sic] before Judge Ervin at that
time. So, that in response to those discovery requests, this
document should have been identified and if a privilege
was claimed, it should’ve been asserted as to this particular
document.

[DEFENSE COUNSEL]: Okay. Because today we’ve had a
lot of arguments about the nature – we’ve had arguments
about the nature of the committee that reviewed it in the
system and all that. I just want to know if that’s going to
be part of the issue that’s going to be taken into – that could
be potentially taken up. I don’t know. I assume my client
is going to want to parti- protect their – their medical
review committee and that’s not casting (inaudible) on
anyone in this room ---

THE COURT: I know.

[DEFENSE COUNSEL]: --- I’m just saying, I assume that’s
going to be their position.

THE COURT: Sure.

[DEFENSE COUNSEL]: So, it needs to be as – as clear as
we can get it. So, you know, I don’t know if [Plaintiff’s
Counsel] and I can go back and forth and find something
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 that would – that would satisfy, Your Honor.

 THE COURT: Yeah. Why don’t – y’all [Defense Counsel
 and Plaintiff’s Counsel] work on the order and I’ll take a
 look at what you draft, and we’ll go from there. . . .

 ....

 [DEFENSE COUNSEL]: Is it your position it’s the same
 doc – because he was looking at a document and he ordered
 it to be produced and we produced it ---

 THE COURT: Yeah.

 [DEFENSE COUNSEL]: --- and now we’re being told that
 we didn’t comply with his order by producing a different
 document. So, that’s what I’m trying to figure out how to –
 how to craft this. I understand the [c]ourt’s ruling, I just
 want to put it in a box where I can explain it.

 THE COURT: Yeah, I don’t know that I can answer that
 question until I can see each version of the proposed orders.

 ....

 THE COURT: All right. Anything else we need to address?

 [DEFENSE COUNSEL]: No.

¶ 45 This exchange demonstrates that Defense Counsel sought clarification

 pertaining to the trial court’s ruling on the privilege to “establish the parameters of

 the argument” for an appeal, and stated that he “[understood] the [c]ourt’s ruling,”

 but wanted “to put it in a box where [he could] explain it.” When the trial court

 declined to answer Defense Counsel’s questions at the time, and asked if anything

 else needed to be addressed, Defense Counsel replied “[n]o.” Based on this exchange,
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 it is apparent that Defendants only requested detailed conclusions of law, but made

 no specific request for the trial court to make findings of fact in accordance with Rule

 52, and accordingly, the trial court was under no obligation to make such findings.

 See Brown v. Brown, 47 N.C. App. 323, 325, 267 S.E.2d 345, 347 (1980) (“[T]he record

 fails to show that [the] defendant requested [] findings [of fact] . . . . Absent request,

 the [trial] court is not required to find facts . . . .”); Kolendo v. Kolendo, 36 N.C. App.

 385, 386, 243 S.E.2d 907, 908 (1978) (“[I]f no request is made by the parties to a

 hearing on a motion, then the trial [court] is not required to find the facts upon which

 he bases his ruling.”).

¶ 46 As no findings of fact were specifically requested by Defendants, and were not

 required by statute, we must “presume[] that the [trial] court on proper evidence

 found facts to support its judgment.” Brown, 47 N.C. App. at 325, 267 S.E.2d at 347.

 Adopting this presumption, I would hold it is patently unnecessary to remand this

 matter for further evidentiary findings.

 CONCLUSION

¶ 47 Defendants failed to include the document at issue in the Record on appeal,

 send it as a documentary exhibit, or provide it under seal. This failure was a violation

 of the appellate rules, and due to the severe impact on our ability to conduct

 meaningful appellate review, Defendants’ noncompliance rose to the level of a

 substantial failure and gross violation. Dismissal is the appropriate remedy under
 WILLIAMS V. ALLEN

 2021-NCCOA-410

 MURPHY, J., dissenting.

 Rule 34, and the circumstances of this case do not justify invoking Rule 2.

¶ 48 Setting aside this violation, as the Majority implicitly does, I reach the merits

 and fully dissent from the Majority’s analysis. I would hold the Order should be

 affirmed. Defendants failed to produce evidence that they are entitled to the medical

 review committee privilege set forth in N.C.G.S. § 90-21.22A. In addition, Defendants

 did not specifically request that the trial court make any findings of fact and the trial

 court was not obligated under any authority to do so. For these reasons, I disagree

 with the Majority’s decision to remand for further findings and respectfully dissent.