IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-145

No. 339A21

Filed 16 December 2022

HANIA H. WILLIAMS as Executor and Administrator of the Estate of PATRICK WILLIAMS

v.

MARCHELLE ISYK ALLEN, P.A., NILES ANTHONY RAINS, M.D., BRONWYN LOUIS YOUNG, II, M.D., EMERGENCY MEDICINE PHYSICIANS OF MECKLENBURG COUNTY, PLLC d/b/a US ACUTE CARE SOLUTIONS, LLC., C. PETER CHANG, M.D., CHARLOTTE RADIOLOGY, P.A., and THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a CAROLINAS HEALTHCARE SYSTEM or ATRIUM HEALTH

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 278 N.C. App. 790, 2021-NCCOA-410, remanding an order entered on 24 March 2020 by Judge Forrest Bridges in Superior Court, Mecklenburg County. Heard in the Supreme Court on 10 May 2022.

*Knott & Boyle, PLLC, by W. Ellis Boyle and Joe Thomas Knott III, for plaintiff-appellant.*

*Dickie, McCamey & Chilcote, P.C., by John T. Holden, for defendant-appellees Marchelle Allen, P.A., and Emergency Medicine Physicians of Mecklenburg County, PLLC.*

MORGAN, Justice.

¶ 1   In this appeal, we are called upon to determine whether a trial court erred in failing to make specific findings of fact as part of an order compelling discovery

pursuant to Rule 37 of the North Carolina Rules of Civil Procedure. Based upon our determination that no party specifically requested that the trial court make findings of fact to support its ruling on this interlocutory motion, we conclude that the trial court was not required pursuant to Rule 52 of the Rules of Civil Procedure to make such findings and thus the trial court's order was proper and sufficient.

## I. Factual background and procedural history

This matter arises from the death of Patrick Williams (Williams) following his visits to and encounters with various of the named defendants from which he sought medical care. On 6 May 2016, Williams experienced worsening pain in his back, stomach, and hip. Eventually, Williams's wife, plaintiff Hania H. Williams, took Williams to Piedmont Urgent Care-Baxter in Fort Mill, South Carolina, but upon their arrival Williams was unable to get out of the car. Williams's medical condition was not evaluated by any healthcare provider at Piedmont Urgent Care-Baxter, but staff of that facility called 911 for assistance for Williams. Emergency Medical Services personnel responded to the urgent care location and transported Williams by ambulance to the emergency department at Carolinas Medical Center Pineville (CMC-Pineville) hospital just before 4:00 p.m.

In the emergency department of CMC-Pineville, defendant Dr. Bronwyn Louis Young II ordered 7.5 mg of oral hydrocodone and 600 mg of ibuprofen for Williams. At about 4:50 p.m., defendant Marchelle Isyk Allen, a physician's assistant affiliated

with defendant Emergency Medicine Physicians of Mecklenburg County, PLLC (EMP), evaluated Williams and reported that Williams was experiencing increasing lower back pain radiating down his left leg. Allen ordered 4 mg of morphine, 10 mg of Decadron, 10 mg of Flexeril, 4 mg of Zofran, and an x-ray of Williams's spine. Defendant Dr. C. Peter Chang read Williams's x-ray and reported, "no acute osseous abnormality," but he observed "unusual linear calcifications . . . to the right and left of the lumbar spine along the retroperitoneum likely vascular in nature." Allen did not order further diagnostic tests for Williams but did prescribe Flexeril and hydrocodone. Williams was then discharged from CMC-Pineville with instructions to schedule an office visit with an orthopedic practice "within 2–4 days." Dr. Niles Anthony Rains signed the record of the treatment provided by Allen to Williams on 7 May 2016 at 6:36 a.m.

¶ 4     Although Williams took the prescribed hydrocodone every six hours upon his return home, his previous pain persisted, and he additionally developed abdominal pains. Williams returned to the emergency department of CMC-Pineville on 7 May 2016 at 9:56 p.m., presenting with low blood pressure as well as severe abdominal pain. Rains ordered a CT angiogram of Williams's chest, abdomen, and pelvis, which revealed a ruptured abdominal aortic aneurism measuring 12 centimeters by 9.7 centimeters. Rains contacted the emergency department of Carolinas Medical Center Main (CMC-Main) in Charlotte for immediate surgical repair of the ruptured

aneurism. Williams was transferred to CMC-Main by helicopter, but the surgery was unsuccessful in saving Williams's life. Williams was pronounced dead at 3:24 a.m. on 8 May 2016. On 9 May 2016, Rains informed Allen of Williams's death and of plaintiff's 7 May 2016 statement to emergency department staff at CMC-Pineville that if anything should happen to Williams, plaintiff would be filing a claim against the personnel who treated him during his 6 May 2016 visit. Rains then instructed Allen to memorialize her interactions with and treatment of Williams on an electronic form provided by her EMP group employer. This electronic report was later designated "Document B" during discovery in the lawsuit which ensued as a result of Williams's death.

¶ 5    Plaintiff, Williams's widow, as executor and administrator of Williams's estate, brought this action for wrongful death on 2 May 2018, and plaintiff also asserted a claim for loss of consortium resulting from Williams's death. During discovery, plaintiff submitted interrogatories to defendants, including Allen, and sought the production of documents relating to any investigation by defendants related to Williams's treatment and death and any information related to defendants' interactions with and their care provided to Williams. In her responses to interrogatories 16, 19, 20, 21, and 22, and the corresponding requests for production—which concerned any written record Allen made about her treatment of Williams and any thoughts she had about the treatment she provided to him in May

2016—Allen raised no objection for privilege. Allen further claimed that she had never participated in any investigation or peer review process with EMP. Defendants did lodge a series of generic objections to interrogatories 4, 12, and 13, and the corresponding requests for production, referring to North Carolina's statutorily defined peer review privilege for certain medical care providers, N.C.G.S. § 90-21.22A (2021), as well as to attorney-client privilege and attorney work product doctrine.

¶ 6        On 11 July 2019, a few days before her deposition was set to occur and more than four months after she submitted her written discovery responses, Allen produced a privilege log designating a four-page document identified as being written on 10 May 2016 for which Allen claimed privilege based on: "Work Product; and Prepared by the Defendants in anticipation of litigation, peer review." Upon learning of Allen's privilege log identifying the document, plaintiff cancelled Allen's scheduled deposition to pursue production of the document belatedly recognized as being withheld under a claim of privilege or protection. In a motion to compel pursuant to Rule 37(a) that was filed on 17 July 2019, plaintiff sought the production of the document characterized as typed notes Allen had created on 10 May 2016, as identified in the privilege log produced on 11 July 2019. *See* N.C.G.S. § 1A-1, Rule 37(a) (2021).

¶ 7        At a hearing on the motion to compel on 29 August 2019, plaintiff asserted that Allen had withheld the document at issue and failed to make any privilege assertion.

Defendants in turn argued that the document at issue was being withheld on the basis of the work product, attorney-client, and peer review privileges, noting that it was created by Allen at the direction of Rains and for the risk management department, with a copy retained by Allen on her computer. No argument was made asserting medical review committee privilege as set forth in N.C.G.S. § 90-21.22A in connection to the four-page document created by Allen. The trial court announced during the hearing that "Allen has failed to persuade the [c]ourt that the document is protected by the work product privilege such that the [c]ourt would allow the Motion to Compel for discovery of that document."[1]

On 21 November 2019, plaintiff filed a second Rule 37 motion in which she alleged, *inter alia*, the following: On 17 September 2019, defendants produced a three-page document created by Allen which was purportedly the document which was the subject of the 29 August 2019 hearing. However, during Allen's deposition on 30 October 2019, Allen explained that the document produced was actually a diary entry that she created for her own use and that she had never submitted the document to EMP or any other risk management department. For this reason, it was apparent to plaintiff that the document produced would never have been the proper subject of any type of privilege assertion. Allen further acknowledged that she had submitted an

---

[1] The trial court entered an order granting plaintiff's Motion to Compel on 15 November 2019.

entirely separate report to EMP's risk management department through the company's website. The report to EMP's risk management department—Document B—was never produced during discovery. Plaintiff asked the trial court to compel defendants to comply with the existing discovery order in addition to requesting that sanctions be ordered against defendants. In response, defendants filed a memorandum of law in opposition to plaintiff's second motion to compel in which they acknowledged that Document B had not been produced in discovery, explained that counsel for defendants had been unaware of the existence of Document B at the time of the hearing on 29 August 2019, and asserted a claim of medical review committee privilege pursuant to N.C.G.S. § 90-21.22A.

¶ 9        A hearing on the second motion to compel was held on 31 January 2020. After hearing from the parties, reviewing the affidavits, and conducting an in-camera review of the disputed second document, the trial court granted the motion but ordered that the subject document be kept under seal pending appeal. The trial court denied plaintiff's motion for sanctions and awarded no fees or sanctions. A written order was filed by the trial court on 24 March 2020. Defendants appealed to the North Carolina Court of Appeals.

## II.    The Court of Appeals proceeding

¶ 10       In the Court of Appeals, defendants argued that the trial court erred in granting plaintiff's motion to compel because the trial court failed to make

appropriate findings of fact and conclusions of law that would allow meaningful

appellate review and that error occurred because Document B was shielded from

discovery by the medical review committee privilege. After observing that

interlocutory orders compelling the discovery of documents over an assertion of

protection by the medical review committee privilege affect a substantial right and

are immediately reviewable on appeal, *Williams v. Marchelle Isyk Allen, P.A.*, 278

N.C. App. 790, 2021-NCCOA-410, ¶ 17 (citing *Hammond v. Saini*, 229 N.C. App. 359,

362 (2013), *aff'd as modified*, 367 N.C. 607 (2014)), the Court of Appeals addressed

defendants' argument that the trial court erred by granting plaintiff's motion to

enforce its previous motion to compel production in light of Allen's invocation of the

statutory privilege, *Williams*, ¶¶ 20–24. In order "to encourage candor and objectivity

in the internal workings of medical review committees," *Shelton v. Morehead Mem'l

Hosp.*, 318 N.C. 76, 83 (1986), the General Assembly has determined that

> [t]he proceedings of a medical review . . . committee, the
> records and materials it produces, and the materials it
> considers shall be confidential and not considered public
> records . . . and shall not be subject to discovery or
> introduction into evidence in any civil action against a
> provider of health care services who directly provides
> services and is licensed under this Chapter.

N.C.G.S. § 90-21.22A(c). The statute defines a "medical review committee" as "[a]

committee *composed of health care providers licensed under this Chapter* that is

*formed for the purpose of evaluating the quality of*, cost of, or necessity for *health care*

*services*, including provider credentialing." N.C.G.S. § 90-21.22A(a)(1) (emphases added). In their appeal, defendants—who, as the parties asserting the claimed privilege, bore the burden of establishing its applicability—argued that the trial court had failed to make findings of fact and conclusions of law, specifically regarding whether the committee in this matter was composed of "health care providers licensed under this Chapter" and was "formed for the purpose of evaluating the quality of, cost of, or necessity for health care services, including provider credentialing," N.C.G.S. § 90-21.22A(a)(1), (c).

¶ 11    In the view of the majority of the Court of Appeals panel, defendants had appropriately requested, pursuant to Rule 52 of the Rules of Civil Procedure, additional specific findings of fact and conclusions of law concerning the statutory elements set forth in N.C.G.S. § 90-21.22A, and the trial court erred when it failed to comply with defendants' request. On that basis, the majority remanded this case to the trial court in order for it "to . . . enter factual findings and conclusions [of law] consistent with the requirements of N.C.[G.S.] § 90-21.22A." *Williams*, ¶ 25. Thus, the majority in the lower appellate court did not reach the merits of defendants' privilege argument.

¶ 12    The dissenting judge in the lower appellate court first stated that he would have dismissed the appeal on the basis that the Court of Appeals was unable to meaningfully review the matter because defendants failed to include the disputed

document—the notes regarding Allen's interactions with and treatment of Williams that were prepared by Allen after her discussion with Rains—in the record on appeal, even if under seal. *Id.* ¶ 26 (Murphy, J., dissenting); *see* N.C. R. App. P. 9(a)(1)(e), (a)(1)(j), (c)(4). Alternatively, the dissenting judge opined that, if the Court of Appeals elected to reach the merits of defendants' appeal, he believed it should affirm the trial court's order based on the dissenting judge's belief that defendants (1) had not satisfied their burden of production in asserting the medical review committee privilege provided by N.C.G.S. § 90-21.22A, and (2) did not make a clear request for the trial court to make findings of fact in accordance with Rule 52 at the hearing on 31 January 2020, and accordingly, the trial court was under no obligation to make such factual findings. *Id.* ¶¶ 40, 45 (Murphy, J., dissenting). On 7 September 2021, plaintiff timely filed a notice of appeal in this Court based upon the dissent in the Court of Appeals pursuant to N.C.G.S. § 7A-30(2).

## III. Analysis

Oral argument before this Court took place on 10 May 2022. Plaintiff argued that the dissent in the Court of Appeals was correct on all three of the bases upon which that judge would have resolved the matter in plaintiff's favor: first, that defendants failed to preserve any arguments for appeal by failing to include a copy of Document B in the record on appeal; second, that defendants failed to satisfy the strict statutory burden of proof for claiming medical review committee privilege

under N.C.G.S. § 90-21.22A; and third, that because defendants did not specifically request that the trial court make findings of fact pursuant to Rule 52, the trial court did not err in failing to do so. We consider only the third point raised by plaintiff and addressed by the dissenting judge—that the trial court failed to make the required findings of fact.

¶ 14      Upon our considerations of the arguments of the parties, along with a careful review of the transcript from the 31 January 2020 trial court hearing, we agree with the position of the dissenting judge in the Court of Appeals that defendants did not specifically request findings of fact regarding the statutory elements set forth in N.C.G.S. § 90-21.22A and that in the absence of such a specific request by defendants, the trial court was not required to make any findings of fact in resolving plaintiff's motion to compel. We reach this result through an examination of the clear provisions of Rule 52 as confirmed by well-established precedent.

¶ 15      In civil cases, whether a trial court *must* make findings of fact in a particular proceeding is always determined by statute or rule. In certain specific types of actions, a statute may explicitly require that a trial court make particular findings of fact. For example, "[i]n any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, *shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the*

*child.*" N.C.G.S. § 50-13.5(i) (2021) (emphasis added); *see also* N.C.G.S. § 45-21.16(d) (2021) (noting the specific findings which must be made by a clerk of court when a mortgagee or trustee wishes to exercise a power of sale); N.C.G.S. § 97-84 (2021) (providing that disputes under the Workers' Compensation Act "shall be decided and *findings of fact issued* based upon the preponderance of the evidence in view of the entire record" (emphasis added)). In contrast, N.C.G.S. § 90-21.22A has no such requirement for any particular findings of fact to be made by a trial court, a circumstance which is unsurprising given that this statute is largely definitional, with provisions explaining what persons and materials are shielded from discovery. *See* N.C.G.S. § 90-21.22A.

¶ 16     In other circumstances, a statute may give the parties the *option* of requesting findings of fact from the trial court. In an action for support of a minor child, for instance, "*upon request of any party, the [trial c]ourt shall hear evidence, and from the evidence, find the facts relating to the reasonable needs of the child for support and the relative ability of each parent to provide support.*" N.C.G.S. § 50-13.4(c) (2021) (emphasis added).

¶ 17     Here, the Court of Appeals majority and defendants focus on Rule 52 of the Rules of Civil Procedure as the applicable basis for concluding that the trial court erred in failing to make findings of fact. Certainly, a trial court acting as the finder of fact in a bench trial is required to "find the facts specially and state separately its

conclusions of law [before] direct[ing] the *entry of the appropriate judgment.*" N.C.G.S. § 1A-1, Rule 52(a)(1) (emphasis added). The decision appealed by defendants in this matter is not a final judgment but rather an interlocutory order compelling discovery, as the Court of Appeals majority correctly observed in its opinion. *Williams*, ¶ 14. Pursuant to Rule 52, "[f]indings of fact and conclusions of law are necessary *on decisions of any motion* or order ex mero motu *only when requested by a party* and as provided by Rule 41(b)." N.C.G.S. § 1A-1, Rule 52(a)(2) (emphases added). The majority of the lower appellate court panel determined that "[d]efendants' counsel correctly sought clarification of the ruling and requested the trial court to make specific findings and conclusions," *Williams*, ¶ 23, but that nevertheless "the trial court declined to rule about whether the medical review committee privilege applied or not," *Williams*, ¶ 22.

Our review of the 31 January 2020 hearing transcript leads us to disagree with the majority's view on the former point: defendants *did not* specifically request findings of fact. After hearing from the parties on the various issues before it, the trial court announced its intended ruling regarding the motion to compel the production of the disputed document in open court:

> THE COURT: . . . I'm going to direct that that document be provided to . . . plaintiff. Now, at this time, I'll retain it under seal (clears throat) in the file . . . .
>
> [DEFENSE COUNSEL]: Well, Your Honor, *that's what I wanted to clarify* because as you know the, uh,

> legitimate and bona fide assertion of a privilege, even is —
> is not an interlocutory appeal. So, I just need — *if the
> [c]ourt can clarify* and perhaps this can be worked out,
> *whether you are ruling the privilege was waived, the
> privilege doesn't apply, the privilege is — is somehow
> defeated so that we can establish the parameters of the
> argument* for [the] Court of Appeals —
>
> THE COURT: Uh-huh.
>
> [DEFENSE COUNSEL]: — if that should be the
> case.

The above-quoted language is specifically identified by defendants as evidence of defendants' explicit request for factual findings on the trial court's privilege ruling, but this request is unavailing to defendants' position because the determination of whether the medical review committee privilege created by N.C.G.S. § 90-21.22A was "waived" or "defeated" or "doesn't apply" is a legal conclusion which may be based upon findings of fact rather than themselves being findings of fact.

> As a general rule, however, any determination requiring
> the exercise of judgment, *see Plott v. Plott*, 313 N.C. 63, 74
> . . . (1985), or the application of legal principles, *see Quick
> v. Quick*, 305 N.C. 446, 452 . . . (1982), is more properly
> classified a conclusion of law. Any determination reached
> through "logical reasoning from the evidentiary facts" is
> more properly classified a finding of fact. *Quick*, 305 N.C.
> at 452 . . . (quoting *Woodard v. Mordecai*, 234 N.C. 463, 472
> . . . (1951)).

*In re Helms*, 127 N.C. App. 505, 510 (1997); *see also Finding of Fact*, Black's Law Dictionary (6th ed. 1990) (defining "findings of fact" as "[d]eterminations from the evidence of a case . . . concerning facts averred by one party and denied by another");

*Conclusion of Law*, Black's Law Dictionary (6th ed. 1990) (defining "conclusions of law" as "[f]inding[s] by [a] court as determined through [the] application of rules of law"). Whether a privilege such as that at issue in this matter applies or has been waived is a legal conclusion which is in turn based upon a trial court's evaluation of the evidence presented by the parties.

Looking at the continuation of the exchange between counsel for the parties and the trial court buttresses our view that findings of fact were not requested by defendants:

> [PLAINTIFF'S COUNSEL]: Your Honor, not to object, but it may help if the question is posed as, "Are you granting the [m]otion for 37(b) to enforce an existing order?"
>
> THE COURT: Yes, yes.
>
> [DEFENSE COUNSEL]: So, you'll — so, if that — so, the [c]ourt's order, as I understand it is that the [medical] review [committee] privilege that was identified in the original privilege log was the subject of the or — of the argument before Judge Ervin [at the 29 August 2019 hearing] is overruled and it is — the privilege is (inaudible) as to this document, that you have found?
>
> . . . . [discussion about the "diary" entry created by Allen versus Document B]
>
> THE COURT: I'm not saying it's the same document. I'm saying that [Document B] was responsive to the request for discovery that were [sic] before Judge Ervin at that time. So, that in response to those discovery requests, this document should have been identified and if a privilege was claimed, it should've been asserted as to this

particular document.

[DEFENSE COUNSEL]: Okay. Because today we've had a lot of arguments about the nature — *we've had arguments about the nature of the committee that reviewed it in the system and all that. I just want to know if that's going to be part of the issue that's going to be taken into — that could be potentially taken up.* I don't know. I assume my client is going to want to . . . protect their — their medical review committee and that's not casting (inaudible) on anyone in this room —

THE COURT: I know.

[DEFENSE COUNSEL]: — I'm just saying, I assume that's going to be their position.

THE COURT: Sure.

[DEFENSE COUNSEL]: So, it needs to be as — as clear as we can get it. So, you know, I don't know if [plaintiff's counsel] and I can go back and forth and find something that would — that would satisfy, Your Honor.

THE COURT: Yeah. Why don't — y'all work on the order and I'll take a look at what you draft, and we'll go from there. . . .

. . . .

[DEFENSE COUNSEL]: Is it your position it's the same doc- because he was looking at a document and he ordered it to be produced and we produced it —

THE COURT: Yeah.

[DEFENSE COUNSEL]: — and now we're being told that we didn't comply with his order by producing a different document. So, that's what I'm trying to figure out how to — how to craft this. I understand the [c]ourt's

ruling, *I just want to put it in a box where I can explain it.*

>    THE COURT: Yeah, I don't know that I can answer that question until I can see each version of the proposed orders.

>    . . . .

>    THE COURT: All right. Anything else we need to address?

>    [DEFENSE COUNSEL]: No.

While defense counsel noted that "arguments about the nature of the committee" had been presented, he did not request findings of fact on that question but instead focused on properly framing the issue to potentially be presented upon an appeal and on how to explain the trial court's ruling, either to defendants or to the Court of Appeals. Further, read in context, the primary confusion expressed by defense counsel appears to have concerned the ruling resulting from the 31 January 2020 hearing on Document B as it might relate to the trial court's previous ruling regarding the diary entry. Or, in the words of the dissenting judge on the Court of Appeals panel:

>    This exchange demonstrates that Defense Counsel sought clarification pertaining to the trial court's ruling on the privilege to "establish the parameters of the argument" for an appeal, and stated that he "[understood] the [c]ourt's ruling," but wanted "to put it in a box where [he could] explain it." When the trial court declined to answer Defense Counsel's questions at the time, and asked if anything else needed to be addressed, Defense Counsel replied "[n]o." Based on this exchange, it is apparent that

> [d]efendants only requested detailed conclusions of law, but made no specific request for the trial court to make findings of fact in accordance with Rule 52, and accordingly, the trial court was under no obligation to make such findings.

*Williams*, ¶ 45 (Murphy, J., dissenting) (first through fourth alterations in original).

We agree, and accordingly, we reverse the decision of the Court of Appeals, leaving the trial court's order compelling discovery in effect, and remand to the Court of Appeals for further remand to the trial court.

REVERSED AND REMANDED.

Chief Justice NEWBY and Justice ERVIN did not participate in the consideration or decision of this case.